## PEOPLE v. CALDWELL

1. CRIMINAL LAW—ILLEGAL POSSESSION OF AIRPLANE—ILLEGAL USE OF AIRPLANE—EVIDENCE—SUFFICIENCY.

   Testimony of a witness that he drove defendant to an airport, arriving there between 12:30 and 1 a.m., that defendant left the car, and shortly thereafter the witness heard the noise of an airplane engine, plus the testimony of a nearby homeowner that at approximately the same time on the same day he saw an airplane taxi around that airport for a half hour, finally crashing into a utility pole, and that he followed a car, with its lights off, from that airport to a town where he called the sheriff, was sufficient to prove defendant guilty beyond a reasonable doubt of illegally possessing and using an airplane (MCLA § 750-.367b).

REFERENCES FOR POINTS IN HEADNOTES
[1]  8 Am Jur 2d, Aviation §§ 135–137.
[2, 3]  21 Am Jur 2d, Criminal Law § 226.
[3]  53 Am Jur, Trial §§ 209, 247, 282.
[4]  53 Am Jur, Trial § 486.
[5]  53 Am Jur, Trial §§ 495–504, 520, 536.
[6, 8]  53 Am Jur, Trial §§ 751–757.
[7]  53 Am Jur, Trial § 827.
[8]  53 Am Jur, Trial § 554.

2. CRIMINAL LAW — TRIAL — EVIDENCE — SUFFICIENCY — NEGATION OF REASONABLE THEORIES OF INNOCENCE.

Sufficient evidence negating every reasonable theory consistent with defendant's innocence was presented where defendant's only theories of innocence were mistaken identification of him by a prosecution witness and the testimony of his alibi witnesses.

3. CRIMINAL LAW — TRIAL — EVIDENCE — MISTAKEN IDENTIFICATION — ALIBI — WITNESSES — CREDIBILITY — QUESTION FOR JURY.

Mistaken identification of defendant by a witness and defendant's alibi evidence are not reasonable theories of his innocence within the rule requiring the prosecution to produce sufficient evidence negating every reasonable theory consistent with defendant's innocence, as both matters clearly deal with the credibility of witnesses and thus are questions for the jury.

4. TRIAL—JURY—PROSECUTOR'S SUMMATION—PROPRIETY.

Prosecutor's statement in his summation to the jury that the people felt there was some basis to believe that defendant was guilty of the crime charged or the people wouldn't have brought the matter before them was not improper in that it attributed the belief of guilt to the people and its effect on the jury could not be measured, as an examination of that summation as a whole and the placing of that statement in its proper context did not disclose that the prosecutor's summation was prejudicial.

5. TRIAL—JURY—PROSECUTOR'S SUMMATION—PREJUDICIAL EFFECT — REQUEST FOR CHARGE TO REMOVE.

If defense counsel anticipates that a prosecutor's remark in summation might have a prejudicial effect upon the jury, defense counsel ought in fairness to call the court's attention to that language and to request a charge to remove the effect of such prejudicial influence.

6. TRIAL—JURY—INSTRUCTION—BURDEN OF PROOF—NEGATION OF INNOCENCE THEORIES—OMISSION—NON-REVERSIBLE ERROR.

Omission in a burden of proof instruction that the prosecution must prove guilty beyond a reasonable doubt by evidence negativing every reasonable theory consistent with defendant's innocence, does not constitute reversible error as there are a number of methods of defining proof beyond a reasonable doubt, of which the reasonable theory rule is but one.

7. Trial — Jury — Instructions — Non-Objection — Court Rule — Waiver.

Defendant's failure to object to jury instructions submitted by prosecution, as well as his failure to request his own instructions, constituted a waiver of assignment of error based upon the giving, or the failure to give, an instruction (GCR 1963, 516.2).

8. Trial—Criminal Law—Court Charge—Reasonable Doubt— Defense Counsel's Duty.

Defense counsel who is not satisfied with the court's charge regarding reasonable doubt and who considers it desirable that the meaning of that term be more fully explained, has the privilege and the duty to ask the court for further instructions, and in failing to do this, he is estopped from asserting error, for an appellate court must presume that the jury understood the English language and were able to comprehened the term reasonable doubt.

Appeal from Alcona, Allan C. Miller, J. Submitted Division 3 November 4, 1969, at Grand Rapids. (Docket No. 6,756.) Decided November 25, 1969.

Dennis John Caldwell was convicted by a jury of illegally taking possession of and of using an airplane. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James H. Cook,* Prosecuting Attorney, for the people.

*Beverly J. Clark,* for defendant on appeal.

Before: Fitzgerald, P. J., and R. B. Burns and Bronson, JJ.

Fitzgerald, P. J. The defendant, Dennis John Caldwell, was charged with illegally taking possession of an airplane and of using it under the provisions of MCLA § 750.367b (Stat Ann 1954 Rev §

28.599[2]). The case was heard by a jury which rendered a verdict convicting defendant of the crime with which he was charged and the court sentenced him to serve three to five years in prison. This appeal followed.

On August 11, 1968, an airplane was removed from its hangar at the Harrisville airport. A witness who viewed the incident from his home testified to the effect that an airplane had taxied about the field for approximately one-half hour. The terrestrial sortie terminated when the aircraft crashed into a utility pole and came to rest nose down at a 30 degree angle. An automobile was seen shortly thereafter as it left the airport with its lights off. The homeowner further testified that these events took place shortly after 1 a.m. on August 11, 1968, and that he followed the car to Lincoln, Michigan, where he called the sheriff.

The main witness for the prosecution testified that he had picked up defendant and two others and the four of them drove around during the evening, finally arriving at the Harrisville airport between 12:30 and 1 a.m. The three passengers left the car after arriving at the airport, and shortly thereafter, the witness heard the noise of an airplane engine. After the three men returned to the car, they drove to the town of Lincoln. Defendant denied that he had been at the airport and his defense was based on an alibi, which was supported by four witnesses who placed him in Lincoln during the time the airplane was removed from its hangar.

This appeal concerns three questions to which the Court will address itself. First, the defendant questions the sufficiency of the evidence and argues that the people did not prove guilt beyond a reasonable doubt. Testimony adduced from witnesses called by the prosecution placed the defendant at the airport

sometime between 12:30 and 1 a.m. where he remained for approximately a half hour on the night in which the misappropriation of the plane took place. Besides the statements of Mr. Clifford Wrigley, the owner of the home across from the airport, that he watched a plane taxi around and finally crash, there is also his testimony that this took place shortly after 1 a.m., and that he followed a car which left the deserted airport for Lincoln.

The defense was based almost entirely on an alibi, substantiated by four witnesses. Three of these individuals were close associates of the defendant, and it is possible that the jury felt they were biased. The testimony of the fourth witness, the manager of the Twin Lakes Hotel in Lincoln, was not entirely inapposite to the theory advanced by the prosecution.

Defendant also contends that the people failed to provide sufficient evidence negating every reasonable theory consistent with defendant's innocence. In support of this proposition he relies on *People* v. *Johnson* (1966), 4 Mich App 205. The only theories actually set forth are mistaken identification by the driver of the car and the alibi evidence. However, neither of these is a "reasonable theory" within the meaning of the rule laid down in the *Johnson* case, as both are clearly questions of credibility of the witnesses, and hence within the province of the jury. A review of the entire record in the instant case leads us to the conclusion that sufficient evidence existed to justify the verdict of the jury.

Defendant next questions the propriety of the people's summation made to the jury, the pertinent part of which reads:

"Obviously the people feel that there is some basis to believe that the defendant is guilty of this crime or we wouldn't have brought it before you."

Defendant avers that the above statement consti-
tuted prejudicial error in that, by attributing the
belief of guilt to the people, the prosecution made
"its impropriety absolute" and that the effect on the
jury cannot be measured.  After reviewing all of
the cases cited by defendant, examining the summa-
tion in whole, and placing the aforementioned sen-
tence in its proper context, we conclude that under
existing Michigan law, the people's summation to
the jury was not prejudicial.  In the case of *People*
v. *Welch* (1890), 80 Mich 616, the prosecution de-
livered a summation which was strikingly similar to
that found in the instant case.  Not only did the
court affirm the conviction, but it distinguished *Peo-
ple* v. *Dane* (1886), 59 Mich 550, and *People* v. *Quick*
(1885), 58 Mich 321, both cited by the defendant and
relied on in support of the question of impropriety.
In distinguishing the cases cited, *supra,* the Court
in the *Welch* case made the following statement
which we feel is relevant to, and controlling of, the
facts in the instant case:

"It will be seen that, in the manner and substance
of what was said by the prosecutor in the suit against
Quick, it is materially different from the case under
consideration.  In the *Quick Case* the asseveration
was made for the very purpose of influencing the
jury to disbelieve the witnesses for respondent.  The
court was requested to correct this influence in his
charge, and he refused.  In the present case the ex-
pression was moderate, and explanatory of the pros-
ecutor's action in not asking a verdict of willful
murder, and why he should urge a conviction for
manslaughter.  If the counsel for respondent an-
ticipated that the remark might have a prejudicial
effect upon the jury, he ought in fairness to have
called the court's attention to the language, and re-
quested a charge to remove the effect of such prej-
udicial influence."

The final question raised concerns the effect of the trial court's instruction to the jury in defining the burden of proof. Defendant, citing *People* v. *Johnson, supra,* argues that guilt beyond a reasonable doubt is defined as evidence negativing "every reasonable theory consistent with the defendant's innocence". Although this definition is correct, its omission should not constitute reversible error, as there are a number of methods of defining "proof beyond a reasonable doubt". Furthermore, the record indicates that defendant was asked by the trial court whether he objected to the instructions, and no such objection was ever raised.

We therefore hold that defendant's failure to object to the instructions below, as well as his failure to request his own instructions, constituted a waiver under GCR 1963, 516.2.

In reviewing a charge concerning "reasonable doubt", the Court in *People* v. *Waller* (1888), 70 Mich 237, most aptly stated:

"We must presume the jury understood the English language, and were able to comprehend the term. If counsel for respondent was not satisfied with this charge, and considered it desirable that the meaning of the term be more fully explained, it was his privilege and his duty to have asked the court for further instructions, and, failing in this, he is estopped from asserting error."

Affirmed.
All concurred.