PEOPLE *v.* GARCIA

1. CRIMINAL LAW—PROSECUTOR'S REMARKS—DEFENDANT'S GUILT—PROSECUTOR'S BELIEF—EVIDENTIARY BASIS.

A prosecutor cannot tell a jury that he believes that the defendant is guilty; however, the prosecutor can argue that from the testimony that the defendant is guilty and can state whether the evidence convinces him and should convince the jury of the defendant's guilt.

2. CRIMINAL LAW—PROSECUTOR'S REMARKS—DEFENDANT'S GUILT—PROSECUTOR'S BELIEF—EVIDENTIARY BASIS.

Prosecutor's remark during closing argument that the defendant was guilty did not constitute prejudicial error on the ground that the remark showed the prosecutor's own belief where the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial §§ 485, 486.
[3] 53 Am Jur, Trial § 495 *et seq.*
[4] 46 Am Jur, Riots and Unlawful Assembly §§ 8, 16.
   21 Am Jur 2d, Criminal Law §§ 442, 443, 450.
[5] 46 Am Jur, Riots and Unlawful Assembly § 16.
[6] 46 Am Jur, Riots and Unlawful Assembly §§ 8, 12.

prosecutor also stated that he was not asking the jury to find the defendant guilty on no evidence and that there was ample evidence to find the defendant guilty.

3. CRIMINAL LAW—PROSECUTOR'S REMARKS—INFLAMMATORY ARGUMENT.

Prosecutor's remark, on closing argument, implying that unless the citizenry kept people like the defendant, charged with rioting, off the streets riots would occur again in their community was overzealous but not so inflammatory as to deprive the defendant of a fair trial.

4. RIOT—UNLAWFUL ASSEMBLY—PRELIMINARY EXAMINATION—PROBABLE CAUSE.

Binding over of the defendant on charges of rioting and unlawful assembly was proper where the facts derived at preliminary examination showed that there was a group of about 40 persons who were yelling and shouting and hurling stones at a police car, that the group divided into two smaller groups, and that a police officer identified the defendant as being both part of the larger group and one of the smaller groups even though it was not established that the defendant was hurling stones, because the larger group's action constituted a crime and defendant's presence in the group constituted probable cause to believe he committed the crime and because the defendant's failure to leave the group after the violence began would indicate that the defendant shared the group's purpose.

5. EVIDENCE—HEARSAY—RIOT—UNLAWFUL ASSEMBLY.

Admitting the testimony of a police officer into defendant's trial for riot and unlawful assembly that the officer had received a radio communication that a group was breaking windows and that the officers should go to the scene of the disturbance was not error where the testimony concerning the radio communication was limited to show that a communication had been made and that as a result of the broadcast, the officers went to the scene and where the testimony was not admitted or offered to show the truth of the matter asserted in the communication (MCLA § 752.541, 752.543).

6. RIOT—"PUBLIC ALARM"—STATUTES.

"Public terror or alarm", as the phrase is used in the statute defining the crime of "riot", would be caused any time a segment of the public is put in fear of injury to either their persons or property (MCLA § 752.541).

Appeal from Kalamazoo, Lucien F. Sweet, J. Submitted Division 3 November 9, 1970, at Grand Rapids. (Docket No. 8138.) Decided March 22, 1971.

Jaime Garcia was convicted of riot and unlawful assembly. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stewart D. Fenner, Jr.,* Assistant Prosecuting Attorney, for the people.

*Quinn E. Benson,* for defendant on appeal.

Before: T. M. BURNS, P. J., and R. B. BURNS and MUNRO,* JJ.

T. M. BURNS, P. J.   On July 30, 1968, Jaime Garcia was arrested in the City of Kalamazoo on the charges of riot and unlawful assembly in violation of MCLA 1971 Cum Supp § 752.541 (Stat Ann 1971 Cum Supp § 28.790[1]) and MCLA 1971 Cum Supp § 752.543 (Stat Ann 1971 Cum Supp § 28.790[3]). Following a preliminary examination and arraignment, defendant was found guilty on both counts and was sentenced to serve 2–1/2 to 10 years on each count with the sentences to run concurrently. Defendant raises five issues on appeal.

1. *Were the remarks of the prosecuting attorney in closing arguments so highly prejudicial that they affected the result of the trial and caused a miscarriage of justice?*

In his closing arguments the prosecutor made the following remarks:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"I have taken too much time. I am going to close. I only want to urge upon you, ladies and gentlemen, Kalamazoo is your community. This type of conduct went on all last summer. It is probably going to go on this summer, too. The police are out there doing their job. They did their job that night as best they could. He is arrested; many others are arrested. I can assure you they will also come to trial.

"This is not the type of conduct that makes for a good community. Not at all. It is going to go on this summer again unless we can get these people off the streets, the people causing the problems. Here is one right here. Here is your chance as a citizen to do something about this problem in Kalamazoo. It is right here as you sit in these chairs. When you go upstairs to deliberate, you can do something right here. You can bring back a verdict of guilty on both counts as to this man, because he is guilty. There is plenty of evidence for you to find him guilty. I urge upon you to do your duty as a citizen. Consider the testimony and in the name of the People of the State of Michigan, I ask you to return a verdict of guilty on both counts. Thank you."

Defendant contends that the closing remarks by the prosecutor were prejudicial because they appealed to the fears and apprehensions of the jury and because the prosecutor stated a belief that the defendant was guilty.

In 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 621, at page 801 it is stated:

"It is not proper for the prosecuting attorney to tell the jury that he believes the defendant guilty. However, it is not error for the prosecutor to argue from the testimony that the defendant is guilty, and to state whether the evidence convinces him and should convince the jury of such guilt."

Upon examination of the prosecutor's closing remarks as a whole, it appears that the remark concerning defendant's guilt was based upon the evidence. In the prosecutor's rebuttal argument he stated:

"I am not asking you to find this man guilty on no evidence. I would say there is ample evidence to find this man guilty on both counts. If he is innocent, and you find that, I won't grumble. I will abide by it, but I say there is evidence for you to find him guilty."

We therefore hold that the prosecutor's remarks about defendant's guilt were based upon the evidence and were not prejudicial.[1]

Defendant also contends, however, that the prosecutor's remarks appealed to the fears of the jurors because of the riots which had occurred in several cities around the country, including Kalamazoo. However, the prosecutor made no mention of any particular occurrence. He did state that this type of conduct would "go on this summer unless we can get these people off the streets." These comments, although not in the best of taste, were not the type of inflammatory statement which would warrant a reversal. In *People* v. *Peck* (1907), 147 Mich 84, 95, it was stated:

"We are not disposed to reverse convictions in criminal cases because of the impassioned arguments of the prosecuting officers, unless we can clearly see that such arguments were unwarranted

---

[1] Although defendant did not object to the remarks of the prosecutor, we have held that an objection is required only when an instruction by the trial court would correct the prejudice. Since it would be difficult to cure prejudice of this type by an instruction, we examined the issue to determine whether in fact defendant was prejudiced, despite the fact that no objection was raised at trial. See *People* v. *David Smith* (1969), 16 Mich App 198.

by the evidence and probably contributed to the result."

The prosecutor's remarks here, although overzealous, were not so prejudicial that they deprived the defendant of a fair trial.

2. *Was the examining magistrate in error in denying defendant's motion to dismiss the charges at the conclusion of the preliminary examination and binding the defendant over to stand trial?*[2]

In the first count of the information defendant was charged with having violated MCLA 1971 Cum Supp § 752.541 (Stat Ann 1971 Cum Supp § 28-.790[1]), which provides:

"It is unlawful and constitutes the crime of riot for 5 or more persons, acting in concert, to wrongfully engage in violent conduct and thereby intentionally or recklessly cause or create a serious risk of causing public terror or alarm."

In the second count of the information defendant was charged with violation of MCLA 1971 Cum Supp § 752.543 (Stat Ann 1971 Cum Supp § 28-.790[3]), which provides:

"It is unlawful and constitutes an unlawful assembly for a person to assemble or act in concert with 4 or more persons for the purpose of engaging in conduct constituting the crime of riot, or to be present at an assembly that either has or develops such a purpose and to remain thereat with intent to advance such purpose."

At a preliminary examination, two questions must be answered in the affirmative before a de-

---

[2] Defendant also moved to quash the information. The trial court's denial of this motion is also claimed as error by the defendant. Since the motion to quash presents the same question as the motion to dismiss at the preliminary hearing, both issues will be discussed together.

fendant can be bound over for trial: (1) has the crime with which the defendant has been charged been committed and (2) is there probable cause to believe that the defendant committed that crime?[3] Therefore, in the case at bar, the questions before the examining magistrate were whether the crimes of riot and unlawful assembly had been committed and whether there was probable cause to believe that defendant committed those crimes.

The relevant facts derived from the testimony at the preliminary examination are these: a Kalamazoo police officer testified that he was watching a group of about 40 people walking in the street in a northerly direction at the intersection of Rose and Bush Streets in the City of Kalamazoo. The officer then testified that the group turned onto Bush Street and again proceeded walking in the street. The officer then stated that he drove around the corner, stopped his car, got out, and turned on four floodlights, one on each corner of the car. The officer stated that the group was yelling and shouting; that stones were hurled at the car; that the group then divided into two smaller groups; and that he saw defendant in the large group and also in one of the smaller groups.

Defendant contends that even though the people may have established that the crimes in question were committed, they failed to establish probable cause that the defendant committed the crimes. It is defendant's position that because defendant was not seen hurling rocks, but was only seen as a member of the groups that defendant's participation in the action of the group was not established.

The statute defining the crime of unlawful assembly requires no action such as the hurling of rocks.

---

[3] *People* v. *Asta* (1953), 337 Mich 590; *People* v. *Jackson* (1967), 8 Mich App 643.

It only requires the defendant to be in an assembly of four or more persons "for the purpose of engaging in conduct constituting the crime of riot, or to be present at an assembly that either has or develops such a purpose and to remain thereat with intent to advance such purpose". The defendant was seen both in the large group and one of the smaller groups after the rocks had been hurled. Therefore, since the larger group's action constituted a crime under the definition of the statute, defendant's presence there constitutes probable cause that he had committed the crime. Since he did not leave the group after the violent conduct began, it would be reasonable to presume that he shared in that group's purpose. Of course his intent might have been totally alien to the actions of the group as a whole, but that is a question to be decided at trial, not at the preliminary examination where the concern is only with whether the crime has been committed and whether there is probable cause to believe that defendant committed the crime. We, therefore, hold that the decision of the examining magistrate was correct.

3. *Did the trial court commit reversible error by allowing Officer Sparrow to testify as to the content of certain police radio communications received by him?*

The objected-to testimony of Officer Sparrow is as follows:

"*Q*. Approximately 11:15 did you receive some radio communication?

"*A*. Yes, sir.

"*Q*. What was that communication?

"*Mr. Benson:* Your Honor, I think that Officer Sparrow can testify as to what he did. I don't

think the radio communication is relevant in this case.

"*Mr. Mitzel (assistant prosecutor)*:  I am only trying to show why this officer reacted the way he did or why he went.  I am not trying to determine the proof of any radio communication.

"*The Court:* You may take it for that purpose.

"*Mr. Mitzel:* What was the radio communication?

"*The Witness:* I was dispatched to Number 4 Fire Station on Rose Street.  A call came that a group of subjects were breaking windows and for us to proceed to the scene."

Defendant now contends that Officer Sparrow's testimony is hearsay even though the testimony was objected to as irrelevant and not as hearsay.  However, even had defendant properly objected to the testimony on the grounds that it violated the hearsay rule, we would have to rule that the trial court was correct in accepting the testimony.  Officer Sparrow's statement concerning the radio communications was offered to show only that the statement was made, and that as a result of the statement, the officers reacted and went to the scene.  The statement was not offered as evidence to prove that defendant broke any windows at the fire station.  Therefore, since the statement was not offered to show the truth of the matters asserted therein, it cannot be hearsay.[4]  We, therefore, hold that the trial court was correct in admitting the testimony for the purpose of showing why the officers went to the scene.

4. *Whether sections 1 and 3 of PA 1968, No 302 (MCLA §§ 752.541, 752.543 [Stat Ann 1971 Cum Supp §§ 28.790(1), 28.790(3)]) are in violation of the United States Constitution or the Michigan Constitution?*

---

[4] McCormick, Evidence § 225, p 460.

Defendant contends that the two sections of Act 302 are unconstitutional because they are so vague the average citizen of average intelligence cannot tell what he may or may not do thereunder. MCLA 1971 Cum Supp § 752.541 (Stat Ann 1971 Cum Supp § 28.790[1]), provides:

"It is unlawful and constitutes the crime of riot for 5 or more persons, acting in concert, to wrongfully engaged in violent conduct and thereby intentionally or recklessly cause or create a serious risk of causing public terror or alarm."

The above section defines the crime of "riot". It specifically states that a riot is five or more people, acting in concert, wrongfully engaging in violent conduct and who, thereby, intentionally or recklessly create a serious risk of causing public terror or alarm. Although defendant attacks almost every phrase in the statute, including what the statute means by the phrase "5 or more persons", this Court is of the opinion that only the phrase "causing public terror or alarm" can be subject to any misinterpretation.

"Public terror or alarm" would be caused any time a segment of the public is put in fear of injury either to their persons or their property. The phrase is sufficiently clear that men of average intelligence would not have to guess as to its meaning nor differ as to its application. We hold that Section 1 gives adequate guidance as to what constitutes the crime of "riot".

MCLA 1971 Cum Supp § 752.543 (Stat Ann 1971 Cum Supp § 28.790[3]), provides:

"It is unlawful and constitutes an unlawful assembly for a person to assemble or act in concert with 4 or more persons for the purpose of engaging in conduct constituting the crime of riot, or to be

present at an assembly that either has or develops such a purpose and to remain thereat with intent to advance such purpose."

The language of the statute defining what constitutes an unlawful assembly is abundantly clear. Since we have already upheld the statute defining the crime of "riot", we must also uphold this statute, since in this Court's opinion the word "riot" is the only term contained in the statute which can be said to be confusing. The statute clearly and concisely sets forth the conduct which constitutes the crime of "unlawful assembly" and does not, therefore, violate due process. The statute is not void for vagueness and uncertainty.

5. *Whether the verdict was against the great weight of the evidence?*[5]

This Court will not disturb a verdict unless the evidence fails to support the findings of fact. Our review of the record, especially the testimony of the police officers whose testimony at trial was substantially the same as their testimony at the preliminary examination, as set forth in issue 2, leads us to the conclusion there is ample evidence, if believed by the jury, to support a verdict of guilty beyond a reasonable doubt.

Affirmed.

All concurred.

---

[5] Defendant here reiterates an incorrect standard of proof. The correct standard is whether there was sufficient evidence to convict beyond a reasonable doubt. *People* v. *Washington* (1966), 4 Mich App 453; *People* v. *Williams* (1962), 368 Mich 494.