PEOPLE v JOLLY

1. CRIMINAL LAW—COUNSEL—TRIALS—ADJOURNMENTS—TIME FOR
   PREPARATION.

   Failure to grant an adjournment to allow appointed counsel more
   time to prepare a defendant's case was not reversible error
   where the trial judge went to extraordinary length to provide
   the defendant with counsel if he wanted it, where the record is
   replete with defendant's assurances that he had or was obtain-
   ing private counsel, where the court-appointed attorney agreed
   to take the case knowing that the trial was scheduled to begin
   in three days, and where failure to obtain either retained or
   appointed counsel was the defendant's choice.

2. CRIMINAL LAW—VOIR DIRE—QUESTIONS—DISCRETION—COURT
   RULES.

   A trial judge's failure, in a criminal case, to ask a question in the
   wording requested by a defendant on the voir dire of the
   prospective jurors was not reversible error where the defendant
   failed to show any prejudice as a result of the claimed error;
   the trial judge has wide discretion regarding the conduct of the
   voir dire (GCR 1963, 511.3).

3. CRIMINAL LAW—EVIDENCE—WITNESSES—PRIOR CONVICTIONS—
   CROSS-EXAMINATION.

   Cross-examination of a witness by a defendant's counsel as to
   arrests not resulting in conviction is not proper.

4. CRIMINAL LAW—TRIAL—APPEAL AND ERROR—MISCARRIAGE OF JUS-
   TICE—STATUTES.

   No judgment or verdict shall be set aside or reversed or a new
   trial be granted by any court of this state in any criminal case,

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 313, 320.
[2] 21 Am Jur 2d, Criminal Law §§ 291, 292.
[3] 21 Am Jur 2d, Criminal Law § 585.
[4] 21 Am Jur 2d, Criminal Law §§ 221, 222, 234–240.
[5–7] 53 Am Jur, Trial §§ 135, 136.
   5 Am Jur 2d, Appeal and Error § 545 *et seq.*

on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice (MCLA 769.26).

5. CRIMINAL LAW—FAIR TRIAL—PROSECUTOR'S REMARKS—LEGITIMATE COMMENT.

A defendant was not denied a fair and impartial trial for armed robbery because of the prosecutor's remarks in his closing argument that the defendants were professionals, where the record demonstrates that the whole robbery was planned in advance, the store was carefully selected as the target, a getaway car was specially stolen, and prior arrangements to "fence" the goods were made; the prosecutor's remarks were legitimate comment upon testimonial evidence.

6. CRIMINAL LAW—PROSECUTOR'S REMARKS—FAILURE TO OBJECT— PRESERVING QUESTION—MANIFEST INJUSTICE.

A defendant was not denied a fair and impartial trial where the prosecutor made improper remarks during his rebuttal argument, but no defense objection or request for curative instruction was made and the error complained of was not preserved and was actually invited by the closing argument of the defense.

7. CRIMINAL LAW—CLOSING ARGUMENTS—PROSECUTOR—DEFENSE COUNSEL.

A prosecutor should not attempt to persuade a jury by allusion to the nature of his public position and duty and defense counsel should not seek to establish the justice of his client's case by arguing some injustice perceived on the part of the prosecutorial office or function.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 October 4, 1973, at Detroit. (Docket No. 13700.) Decided January 15, 1973.

Loren Jolly was convicted of armed robbery and sentenced to serve a term in solitary confinement of not less than 50 nor more than 70 years. Defendant appeals. Conviction affirmed. Sentence vacated and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Daniel A. Kuebler,* Chief, Appellate Division, for the people.

*William Goldberg,* for defendant on appeal.

Before: McGREGOR, P. J., and BRONSON and CARLAND,* JJ.

BRONSON, J. Defendant, Loren Jolly, was charged, along with Ceasar Montevecchio[1] and Joseph Giacalone,[2] with the armed robbery of the Hirsch Jewelry Store. MCLA 750.529; MSA 28.797. The crime occurred in the City of Flint on August 15, 1967. On September 16, 1968, at the conclusion of an extensive trial, the jury returned a verdict of guilty as charged. On October 24, 1968, defendant was sentenced to serve a term in solitary confinement of not less than 50 nor more than 70 years. A motion for new trial was heard and ultimately denied[3] on February 24, 1972. Defendant appealed of right.

Defendant's trial counsel was appointed three days prior to the trial. It is alleged on appeal that the trial judge's failure to grant an adjournment to allow counsel more time to prepare was reversible error. First, while defense counsel may be entitled to the sympathy of this Court, the defendant must be held to the results of his own deliberate neglect. The trial judge went to extraordinary

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] See *People v Montevecchio,* 32 Mich App 163; 188 NW2d 186 (1971), *leave to appeal den,* 387 Mich 762 (1972).

[2] *People v Giacalone,* Docket No. 16852, motion for delayed appeal granted. See 52 Mich App 428; 217 NW2d 444 (1974).

[3] Preparation of the voluminous transcript apparently occasioned the extensive delay.

length to provide defendant with counsel if he wanted it. Over a period of three months defendant made numerous assurances on the record that he had or was obtaining private counsel. At the last minute defendant still had no attorney. The court appointed an attorney, who agreed to take the case knowing the scheduled trial date. The record makes it abundantly clear that any prejudice which may have resulted can be attributed to the defendant. His failure to timely obtain either retained or appointed counsel was defendant's choice.

The trial judge conducted the voir dire of the prospective jurors. Defendant requested a specific question, which the trial judge refused to ask as defense counsel worded it. The judge did indicate that he would consider covering the area in another manner. Defendant assigns this as error. Defendant has failed to show any prejudice as the result of this claimed error. Considering the wide discretion of the trial judge regarding conduct of the voir dire, GCR 1963, 511.3, we find no reversible error.

The trial judge restricted defendant's cross-examination into arrests not resulting in conviction of one of the witnesses. Defendant assigns this as error. We find the trial judge was correct. See *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973).

The next issue is whether the prosecutor's closing argument was sufficiently prejudicial to deny the defendant a fair and impartial trial. We conclude that it was not.

In support of his contention that the prosecutor's closing argument was reversibly improper, defendant directs our attention to the following remarks:

"Robberies are bad, certainly, but this was no hair-brained young kid on the spur of the moment putting his hand in his pocket, going into a store, robbing it, *this was well-planned, conceived, professional group.* * * *

"Mr. Giacalone instructed Mr. Kinsman and Mr. Jolly to go out and steal a car. *Again with the air of professionalism about it.* * * *

*"Now, this is a professional operation from beginning to end, well-planned.* It wasn't a hit-and-miss operation. This was done in our town and in our city. * * *

"We have shown you how they done it, and *it was a professional job.* * * *

"I submit to you that I have never manufactured any testimony that went on that stand, and I resent that man implying it. I am sick and tired every time a lawyer, or prosecutor or police come into a courtroom they are put on trial, because we are trying to do a job, and it is people like him that put us on trial. For what? Because he can't defend his—his client any other way. *His client is guilty.* * * *

"You know, when you successfully infiltrate an underworld operation, you don't do it with Bishop Sheen, you have got to go get one of them, and you do have to put the screws on them a little. There is no question about that. We don't try to hide that here. *But when we used information, we knew whether it was reliable. We knew that.* * * * " (Emphasis added.)

The statute which directs the scope of our review, MCLA 769.26; MSA 28.1096 provides:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

The defendant carefully quotes certain of the prosecutor's remarks which he claims amount to a miscarriage of justice. No defense objection or request for curative instruction was made. Reviewing the entire cause, the context in which these remarks were made, and the recent cases of this Court convinces us that there has been no showing of manifest injustice. See *infra* footnote 6 this opinion, *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973).

The first four quotes concern comment that the defendants were professionals. They were. The record demonstrates that the whole robbery was planned in advance, the store was carefully selected as the target, a getaway car was specially stolen, and prior arrangements to "fence" the goods were made. The prosecutor's remarks were legitimate comment upon testimonial evidence.

The context of these remarks is also informative. The first four remarks occurred during the prosecutor's opening summation to the jury. This summation was short, and, in this writer's opinion, within the bounds of proper argument. The two remaining remarks occurred during the prosecutor's *rebuttal.* The remarks were invited by defendant's closing argument. We have set forth in the margin[4] some of the more graphic examples of

---

[4] Defense counsel for Loren Jolly said during summation, "Now, let's go to Charles Kinsman [a primary prosecution witness].

\* \* \*

"Now, Mr. Kinsman is twenty-eight years old. He is—has been arrested for a number of felonies, first, extortion, armed robbery and pandering, and also kidnapping. You remember those; those are four just lovely little crimes of a lovely little individual twenty-eight years old. I don't think I have to go into it, but I think you know what an extortionist *is.* I don't think there is anyone lower than an extortionist. It is a blackmailer, that is what he is. That is more than even an animal—That is someone—Do you know what a blackmailer is? There is nothing—He admitted he was in this armed robbery, pandering and kidnapping. Of course, he—he said that he plead guilty to extortion,

defense counsel's closing summation. It is by no means an exhaustive list. A reading of the entire

and he also said something about pandering. I am not sure exactly how it went, but I figure two other charges. One charge I think is a very important charge is conspiracy to murder—murder. I can't go into what you can get, but Mr. Leonard stated you can get twenty years for extortion. Think of murder. Think of armed robbery. Think of kidnapping—a kidnapper. These all have been dropped, dismissed against him, murder, kidnapping and armed robbery. There is also—this is just a little one—remember the bad checks up north? Really, you might as well forget about it, when someone lets you off a murder charge and an armed robbery charge.

\* \* \*

"Yet, his [Kinsman] story was just perfect about anything on direct examination \* \* \* .

\* \* \*

"Something is wrong in Denmark. Something—Well, you know, you can understand certain things, too. He [Kinsman] has been in the prosecutor's office hundreds of times. I would say since these charges have been dismissed, he has become involved in this whole matter. The night before he was in the prosecutor's office, which he admitted to. He called—he calls the investigating officer of this case "Marv". He has become pretty good friends of the prosecutor's office. The investigating officer of the whole case, it is "Marv". Now, an extortionist, murderer, kidnapper, "Marv", with the policemen, now. And how many countless times did he talk to Robert F. Leonard [prosecutor], Ward Chapman [assistant prosecutor], and Mr. Gardner?

\* \* \*

"Something else that really bothered me, he [Kinsman] knew what was expected of him. He knew the prosecutor, and he knew the prosecutor had to cover the conviction.

\* \* \*

"Now, let's go to Mr. Swanson. What is he? He is a paid informer.

\* \* \*

"In other words, these witnesses, they don't remember anything other than what they were asked directly on direct examination. They gave those answers back so quick. Anything else they forgot, completely forgot. What is the matter? What happened?

"Remember, he said he called Mr. Leonard to get money?

\* \* \*

"He thinks he works for Mr. Leonard. I think he does, too. Mr. Leonard says he doesn't. He is paid. He goes out and visits Marv Anderson out on the farm and carries a gun. And he knows if people don't pay, he makes them pay with handcuffs and a pistol. He thinks he is a policeman. How do you become a better policeman than giving information and ingratiating himself with Robert Leonard?

\* \* \*

summation creates a cumulative level of prejudice which exceeds the sum of the improper parts.

The tone of the defense summation was set early. Defense counsel commenced his argument with the following remarks:

"And I want you to *consider this case* towards Loren Jolly as you would want to consider towards you or one of your loved ones, or friends, *if you were being tried.* So, if there is a logical reason—just one logical reason that you could not find Loren Jolly guilty beyond a reasonable doubt, you must find him innocent. Remember that is the law, and the judge will instruct you that way." [Defendant's summation, p 626, trial transcript.]

Neither the jurors nor their family and friends were on trial and the suggestion that they were is *not* "the law" as defense counsel implies.

However, the main thrust of defendant's closing

---

"With Kinsman, well, we went through that, what he had to gain. He had a world to gain. And how perfect the story is, and yet only perfect on what questions were asked him by the prosecutor. When I asked him a question, every answer he stumbled for.

\* \* \*

"He hasn't been sentenced yet. He said someone—he didn't say who —will talk to the judge. He states they are going to take care of him. That is up to you what is going to happen. And, about all the money he has received.

\* \* \*

"You know, it is just—it is terrible, you know, what is happening in this courtroom. A deal has been made, I think, but yet that is up to you. From the testimony, do you think a deal has been made? Do you think these men have a motive to lie? Look to the motive. Weigh the testimony. And the Judge will tell you, 'Do you think Charles Kinsman has a motive in telling the truth? Do you think Larry Swanson has a motive in telling the truth? And do you think Neil Breckenridge has a motive in telling the truth? I think they do. They have some excellent motives.

\* \* \*

"Now, I think any other verdict—What you have done, in effect, is you are convicting an innocent man—convicting him. And you are going to let Charles Kinsman go free. That is what you are going to do. You have got to face it."

argument, as disclosed in the marginal note, was an attack on the prosecutor and the prosecution. Defendant's basic premise was that none of the prosecution witnesses were credible because they were either paid, coached, granted special favors or friends of the prosecutor. This summation was a 30-page sustained assault on the prosecutor's investigation and prosecution of the defendants.

The prosecutor objected to the defense summation. This objection and the defense response is also included in the margin.[5] The court ruled in response that the prosecutor would have adequate opportunity to reply in his rebuttal. The two remaining remarks presently assigned as reversible

---

[5] *"Mr. Leonard [prosecutor]:* I am going to object. That is not true. I object to his comments along those lines. I have stood here and heard mistaken facts along—long enough. I am objecting to the comments. That is not true.

*"The Court:* We will give you an opportunity to reply.

*"Mr. Grossman [defense counsel]:* You heard the conspiracy to murder was dropped. You heard the armed robbery was dropped. You heard the kidnapping was dropped. You couldn't hear how long the sentences are, I couldn't give them to you.

*"Mr. Leonard:* I am going to object. It is improper to make—

*"Mr. Grossman:* Your Honor—

*"Mr. Leonard:* Just a minute.

"He is now making argument as though he was denied his rights in this courtroom. We have rules of law—

*"Mr. Grossman:* Your Honor, didn't he include—

*"The Court:* Gentlemen, I think I can resolve the issue. I am giving you all the time you need, counsel, and the prosecution is able to reply in time.

*"Mr. Grossman:* Thank you, your Honor.

"I think the prosecutor told you how long extortion was. I don't think he told you how long he could get on the other charges. Did he? I don't think he did.

"And I really feel you—I think—I think if this man is convicted that you are a party to it. You—you—

"I will say, again, only look at the motives; look what each has to gain. And I think, again, I am going to say it is up to you to determine whether a deal has been made for conviction. It is up to you to determine if certain people go free.

"Again, if Mr. Jolly is found guilty, I really feel it is wrong, but you will have to determine that yourself. Thank you."

error came at the beginning of this rebuttal. Although these remarks were improper they were not reversible error on a review of this entire cause for manifest injustice.[6] In the context of the present record the reasoning of the defendant implies a lack of equality. The respective obligations of the defense and prosecution, in the area of trial advocacy, are seemingly accorded different standards. Canon 7 of the Code of Professional Responsibility and Canons provides: *A lawyer should represent a client zealously within the bounds of the law.* Disciplinary rules DR 7-106(c)(3) and (4) promulgated with Canon 7 provide, inter alia:

"(c) In appearing in his professional capacity before a tribunal, a lawyer shall not:

"(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

This rule requires the same high standards from both the defense and prosecution. The prosecutor's trial advocacy obligations imposed by these rules

---

[6] In *People v Plozai, supra,* the prosecutor said, "William Carter Ellixson was a policeman * * * . [H]e was foully murdered, and there sits his murderer." This remark was not objected to and the Court found "the prejudice resulting from the prosecutor's remark here could have been cured by instruction had defendant objected to the remark below and therefore we decline to reverse on this issue". *See, also,* the following cases where other unchallenged remarks about the defendant's guilt were also found to have created no manifest injustice: *People v Evans,* 36 Mich App 238, 241; 193 NW2d 387, 389 (1971); *People v David Smith,* 16 Mich App 198, 201; 167 NW2d 832, 834 (1969); *People v Russell,* 27 Mich App 654, 663; 183 NW2d 845, 850 (1970); *People v Rowls,* 28 Mich App 190, 195; 184 NW2d 332, 334–335 (1970).

are not altered by the other rules concerning the duty of public prosecutors. Rule DR 7-106[7] is not concerned with trial advocacy but deals with prosecutorial discretion and disclosure.

Further evidence of their *reciprocal* obligations as trial advocates may be found in the report of the American Bar Association Project on Standards for Criminal Justice: Standards Relating to the Prosecution Function and the Defense Function. Standard 5.8 declares the prosecution function:

"5.8 Argument to the jury.

"(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

"(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

"(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

---

[7] Code of Professional Responsibility and Canons, Rule DR 7-103, Performing the Duty of Public Prosecutor or Other Government Lawyer, provides:

"(a) A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause.

"(b) A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."

Standard 7.8 for the defense function is almost identical. It provides:

"7.8 Argument to the jury.

"(a) In closing argument to the jury the lawyer may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for a lawyer intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) It is unprofessional conduct for a lawyer to express his personal' belief or opinion in his client's innocence or his personal belief or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person unless such an inference is warranted by the evidence.

"(c) A lawyer should not make arguments calculated to inflame the passions or prejudices of the jury.

"(d) A lawyer should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict."

At trial both the prosecution and defense must be governed by these or similar obligations. Just as the prosecutor should not attempt to persuade the jury by allusion to the nature of his public position and duty, the defense counsel should not seek to establish the justice of his client's case by arguing some injustice perceived on the part of the prosecutorial office or function. Applying these principles here, where the complained of error was not preserved and was actually invited, we find no manifest injustice.

This writer was not a member of the panel that decided *People v Montevecchio,* 32 Mich App 163; 188 NW2d 186 (1971), *leave to appeal den,* 387 Mich 762 (1972).[8] In order to give careful consideration to the decision in *Montevecchio,* this panel has obtained the closing arguments in *Montevec-*

---

[8] Had I been, I would have expressed a differing viewpoint.

*chio* to compare the summations. *Montevecchio* is distinguishable from the instant record. In *Montevecchio* the argument of the defense counsel was not transcribed. However, reference was made by the prosecutor in rebuttal to the defense argument as follows:

"Now there has been a lot of talk in our argument in this case about the role of attorney, and law and order and justice, and I agree. I agree very much with a great deal of what has been said to you along those lines by Mr. O'Rourke and by Mr. Gadola [defense counsel]."

Without the defense argument, why should we speculate as to whether the prosecutorial argument was unjust in light of the entire record? One further distinguishing feature of *Montevecchio* is the existence of an objection to some of the prosecutor's argument. This objection was incorporated in a defense motion for mistrial. The specific remarks held reversible in Montevecchio were not directly incorporated by defense counsel in his motion for mistrial and thus the specific error was not preserved. However, the existence of some objection indicates that the defense was not merely harboring error for use at the appellate level. Finding no manifest injustice and *Montevecchio* distinguishable, we find no reversible error on this issue.

We have carefully considered defendant's remaining allegations of error and find none of them meritorious.

Although we affirm defendant's conviction, we find that the trial judge impermissibly considered certain matters in the sentencing process. This may be readily corrected by a remand for resentencing before a different judge.

Conviction affirmed. Sentence vacated and remanded for resentencing.

All concurred.