## PEOPLE v POMRANKY

### Opinion of the Court

1. Criminal Law—Appeal and Error—Convictions—Prosecutors —Comments—Objections—Prejudice—Cautionary Instruction.

   A conviction will not be reversed due to the improper comments of a prosecutor where no objection was made, unless the prejudicial effect of the comments was so great that it could not have been cured by a cautionary instruction.

2. Criminal Law—Prosecutors—Complimenting Police Officers— Appeal and Error—Convictions—Objections.

   A prosecutor's complimenting of police officers on their professionalism cannot be urged on appeal as grounds for reversal of a defendant's conviction in the absence of an objection.

3. Criminal Law—Appeal and Error—Prosecutors—Remarks—Responding to Defense Counsel.

   Remarks of a prosecutor when induced by and made in response to statements of defense counsel will not be held to constitute reversible error.

4. Criminal Law—Prosecutors—Remarks to Jury—Appeal and Error—Harmless Error—Instructions to Jury—Function of Counsel—Basis for Jury Verdict.

   Error in a prosecutor's closing remarks to the jury was necessarily harmless where the court instructed the jury to disregard the remarks and then instructed them as to the function of counsel, informing them that the statements of the attorneys

---

References for Points in Headnotes

[1, 2] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
   75 Am Jur 2d, Trial § 211 *et seq.*
[3] 75 Am Jur 2d, Trial §§ 312, 313.
   Propriety and effect of attack on opposing counsel during trial in criminal case. 99 ALR2d 508.
[4] 75 Am Jur 2d, Trial §§ 317, 807.
[5–7] 75 Am Jur 2d, Trial § 192 *et seq.*

were not evidence and that only testimony from the witness stand could form the basis for their verdict.

Dissent by R. M. Maher, J.

5. Criminal Law—Prosecutors—Argument—Jury—Prejudice—Cautionary Instruction.

*Prejudice created by the improper argument of a prosecutor that as a representative of the people, a court officer, he would not come before the jury and present a case which was a sham, could not have been cured by a cautionary instruction; the argument may have led the jury to suspend its own power of judgment in reviewing evidence before it.*

6. Criminal Law—Prosecutors—Presumption of Innocence—New Trial.

*A new trial is required in a criminal case where a prosecutor subtly converts the presumption of innocence into a presumption of guilt by appealing to the jurors to perform a civic duty to support the police, even absent objection at trial.*

7. Criminal Law—Prosecutors—Argument—Jury—Injecting Issues—Predicting Consequences of Verdict.

*A prosecutor must refrain from argument which would divert a jury from its duty to decide a case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.*

Appeal from Midland, James R. Rood, J. Submitted Division 3 May 8, 1975, at Lansing. (Docket No. 20256.) Decided June 24, 1975.

Clayton E. Pomranky was convicted of delivery of a controlled substance, phencyclidine. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Edward G. Durance,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Aloysius J. Lynch,* Special Assistant Attorney General, of counsel), for the people.

*Whittaker & Rowland,* for defendant.

Before: Danhof, P. J., and J. H. Gillis and R. M. Maher, JJ.

Danhof, P. J. Defendant was convicted by a jury of delivery of a controlled substance, phencyclidine, MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). He was sentenced to 1-1/2 to 7 years in prison and he appeals. We affirm.

A Michigan State Trooper, working as a member of an undercover narcotics investigation unit, was introduced to and became familiar with the defendant. On March 27, 1973, equipped with a concealed transmitting device, the trooper went to the defendant's home in response to defendant's offer to sell some "grass". When he arrived, defendant told the trooper that he didn't have any "grass", but he offered to sell the trooper a quantity of "TH" instead. The trooper purchased four tablets of what was later identified as phencyclidine. Defendant informed him that he originally had 50 "hits" of the drug, but that he had "gotten rid of" them earlier.

At trial, defense counsel, in his opening statement, argued to the jury that the police officers had made a mistake, or that "they're out to frame us". During later cross-examination, defense counsel sought to impeach the credibility of the undercover officer by revealing a discrepancy between his testimony during a prior trial concerning the pocket in which he placed the drug after his purchase from the defendant. No recording of the actual transaction was made due to a transmitting device malfunction.

The defendant called no witnesses and relied on the theory that the police officers fabricated the story of the drug purchase for ulterior purposes,

which, as listed in defense counsel's closing argument, included desire for promotion, police corruption and misuse of power. The jury deliberated for 45 minutes, and returned a verdict of guilty as charged.

On appeal, defendant complains principally of certain allegedly improper statements made by the prosecution during closing argument, only one of which was objected to at trial. A conviction will not be reversed due to the improper comments of the prosecutor when no objection is made, unless the prejudicial effect of the comments was so great that it could not have been cured by a cautionary instruction. *People v Charles,* 58 Mich App 371, 387; 227 NW2d 348 (1975), *People v White,* 54 Mich App 342; 220 NW2d 789 (1974). We have examined the various remarks to which no objection was made and the context in which they occurred, and we determine that the prejudicial effect of these remarks was not so great that it could not have been overcome by a cautionary instruction.

During his summation, the prosecutor mentioned that the defendant had told the undercover officer that "he had already sold 50 other hits". Actually, the officer testified that the defendant told him that he had "gotten rid" of them. Even if this is considered to be a material misstatement of fact, it could have easily been corrected had an objection been made. *People v Coffman,* 45 Mich App 480, 487–489; 206 NW2d 795 (1973), *lv den,* 390 Mich 758 (1973).

The prosecutor complimented the police officers on their professionalism, pointing out that they "literally risk their lives to enforce the drug laws". In the absence of an objection, a prosecutor's "pat on the back" of a police officer cannot be urged on

appeal as grounds for reversal. *People v Claugherty,* 36 Mich App 648, 651–652; 194 NW2d 54 (1971).

The effect of the jury's decision on the degree of public tolerance of crime in Midland County was referred to by the prosecutor. While these remarks may be characterized as overzealous, they were not so prejudicial that they denied defendant a fair trial. *People v Garcia,* 31 Mich App 447, 451–452; 187 NW2d 711 (1971).

The last statement of the prosecutor which defendant advances as error is more serious, and it has been properly preserved for our examination by timely objection at trial. This statement, in the context in which it was made, appears in the following excerpt from the closing argument to the jury by the prosecutor, Mr. Rhead:

"Counsel has attempted through his opening remarks to put before you the fact, and I quote and unquote that term, that the police officers, quote, framed Mr. Pomranky, unquote.

"It's interesting that we are here in a Courthouse setting, Mr. Pomranky wants a trial, have the witnesses. But where are the witnesses? Where are the facts? Where are these people that substantiate Mr. Rowland's accusations? Where are they?

"Isn't the police officer entitled to be confronted by this type of facts to verify this frame? Where are they? You don't think counsel would be merely trying to mislead you? Is not the police officer entitled to the same type of facts?

"Do you think I, as a representative of the People, a Court officer, would come before you and represent to you a case that was a sham, a case—

"*Mr. Rowland:* Your Honor, I object to this sort of argument. He is—It's improper. He is trying to testify in final argument.

"*Mr. Rhead:* I don't believe I am, your Honor. The allegation was made by Mr. Rowland.

"*The Court:* Well, I think it would be better if you refrained, without any criticism of your argument at all, Mr. Rhead, I think it might be better to refrain from that portion of it.

"*Mr. Rhead:* What portion is that, your Honor?

"*The Court:* That would the jury think you'd come before them with a sham case. I just think it would be better if you didn't go into that.

"*Mr. Rhead:* Fine, your Honor.

"*Mr. Rowland:* May I ask that the court instruct the jury to disregard—

"*The Court:* The jury will disregard it."

The defendant now argues that the remarks of the prosecutor placed the prestige of his office "behind the contention that the defendant is guilty", citing *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970). This contention has received very serious consideration and has been the subject of thoughtful deliberation by this panel. The thrust of the prosecutor's comments was inexcusable and is expressly disapproved. Nevertheless, we have come to the conclusion that under the circumstances of this case, the remarks were not so prejudicial as to have caused a miscarriage of justice necessitating reversal of the defendant's conviction. MCLA 769.26; MSA 28.1096.

Despite the superficial similarity, the comments made in the present case are distinguishable from the comments which were found to require reversal of defendant's conviction in *People v Humphreys, supra.* There the prosecutor sought to use as substantive evidence of defendant's guilt the opinion of the prosecutor and of the police that the defendant should stand trial on a murder charge. Here, the prosecutor's remarks were made in an attempt to refute defense counsel's charges of police impropriety. The comments, taken in the

context in which they were made, were not intended to lead the jury to suspend its own powers of judgment by placing the prestige of the prosecutor's office into an appeal for a conviction based on the opinion of government officials.

Fairly read, the prosecutor's remarks were not an attempt to vouch for the defendant's guilt on a personal basis. He was not saying, "take it from me, we wouldn't prosecute if he wasn't guilty". Rather, he was saying "we wouldn't prosecute fabricated charges in furtherance of a frameup as defense counsel has told you we did". See *People v Evans,* 36 Mich App 238, 240–241; 193 NW2d 387 (1971). The prosecutor's remarks are more nearly analogous to the comments which formed part of the people's summation in *People v Caldwell,* 20 Mich App 224, 228–229; 173 NW2d 751 (1969), which were as follows: "Obviously the people feel that there is some basis to believe that the defendant is guilty of this crime or we wouldn't have brought it before you". The defendant's claim of prejudicial error was answered by this Court: "After reviewing all of the cases cited by defendant, examining the summation in whole, and placing the aforementioned sentence in its proper context, we conclude that under existing Michigan law, the people's summation to the jury was not prejudicial". See also *People v Miller,* 26 Mich App 665, 670; 182 NW2d 772 (1970), where something more than objection to the prosecutor's statement that "[i]t's one of the strongest cases, one of the most obvious cases that these detectives have seen" was deemed necessary.

Also significantly influencing our decision is the fact that the remarks of the prosecutor were made in reply to statements of defense counsel. It is well-settled that remarks of the prosecutor when

induced by and made in response to statements by defense counsel will not be held to constitute reversible error. *People v Dalton,* 34 Mich App 79; 190 NW2d 735 (1971), *People v Thomas,* 17 Mich App 740, 744; 170 NW2d 286 (1969), *lv den,* 383 Mich 783 (1970). Even though the remarks of the prosecutor may be improper, they will not amount to reversible error where made primarily in response to matters previously discussed by defense counsel. *People v Green,* 34 Mich App 149, 151; 190 NW2d 686 (1971), *lv den* 386 Mich 769 (1971), *People v Harris,* 31 Mich App 100, 102; 187 NW2d 502 (1971), *People v Dersa,* 42 Mich App 522; 202 NW2d 334 (1972), *lv den* 388 Mich 803 (1972), *People v McLendon,* 51 Mich App 543, 548; 215 NW2d 742 (1974).

Trial counsel in *People v Jolly,* 51 Mich App 163; 214 NW2d 849 (1974), devoted his closing argument to an attack on the prosecutor, alleging that all of his witnesses were paid, coached, granted favors, or were friends of the prosecutor. The prosecutor responded during his own closing statement with remarks which were improper. While determining that "some objection" to these remarks was made, this Court found no reversible error because "[t]he remarks were invited by defendant's closing argument" and because they resulted in "no manifest injustice", citing MCLA 769.26; MSA 28.1096.

In addition, the trial court in the present case instructed the jury to disregard the improper remarks of the prosecutor. This admonition was followed by an instruction as to the function of counsel, informing the members of the jury that the statements of the attorneys were not evidence, and only testimony from the witness stand could form the basis for their verdict. Therefore, any

error in the prosecutor's remarks "necessarily was harmless". *People v Smyers,* 47 Mich App 61, 66; 209 NW2d 281 (1973). Regardless of the objection, any error was cured by the instruction. *People v Ballenberger,* 51 Mich App 353, 358; 214 NW2d 742 (1974), *lv den,* 392 Mich 753 (1974).

Finally, we believe that this case comes squarely within the holding of our Supreme Court in *People v Allen,* 351 Mich 535, 544; 88 NW2d 433 (1958). In *Allen,* defense counsel implied that the prosecution had suppressed evidence and that the police were lying. The prosecutor responded with concededly improper comments to which prompt and vigorous objection was made. Nevertheless, the Court refused to reverse the defendant's conviction, and, having evaluated the remarks of the prosecutor in the context in which they occurred, concluded:

"We concede that there is little room for argument that his remarks were intemperate and perhaps better left unsaid. But under all the circumstances we cannot say that they were fatally prejudicial or entirely without provocation. Criminal trials are not basket luncheons, and we seem faintly to recall that in our experience opposing lawyers rarely if ever pelted each other with rose petals. In any case, counsel for defendants cannot on his side be allowed great latitude to goad and provoke adverse comment or criticism from the prosecutor and then seek a reversal because his strategy succeeded. When opposing counsel makes accusations and creates inferences of unfairness and unprofessional conduct against the prosecution, he is scarcely in a position to ask a reversal because of equally intemperate language used in reply. To permit that would be to award victory to those criminal defendants retaining the best "needler." Under the circumstances presented here we must hold that this ground of error is without merit. (See, generally, 2 Gillespie, Michigan Criminal Law and Procedure [2d ed], § 626.)" 351 Mich at 544.

For these reasons, we hold that the comments of the prosecutor, while ill-advised, were not so prejudicial under the circumstances of this case as to have denied defendant a fair trial.

While not formally advanced as a distinct issue in this appeal, defendant suggests that the trial court erred in limiting defense counsel's closing argument. This contention is without merit. *People v Green,* 34 Mich App 149, 152; 190 NW2d 686 (1971), *lv den* 386 Mich 769 (1971).

Affirmed.

J. H. GILLIS, J., concurred.

R. M. MAHER, J. *(dissenting).* In *People v Humphreys,* 24 Mich App 411, 418; 180 NW2d 328 (1970), this Court reversed defendant's conviction because the prejudice created by the following improper argument by the prosecutor could not have been cured by instructions:

"I can assure you this: That if the defendant in the opinion of the police and in my opinion were innocent of this charge, we would not be here right now."

I am unable to distinguish that holding from the case at bar where the prosecutor argued:

"Do you think I, as a representative of the People, a Court officer, would come before you and represent to you a case that was a sham, a case—"

This remark, as the remark in *Humphreys, supra,* "may well have led the jury to suspend its own powers of judgment in reviewing the evidence before it". *People v Humphreys, supra,* at 419. See also *People v McCoy,* 392 Mich 231, 239–240; 220 NW2d 456 (1974).

Furthermore, with respect to the remark by the prosecutor as to the effect of the jury's decision on the degree of public tolerance of crime in Midland County, I find *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971), to be controlling. In *Farrar, supra,* at 298, a new trial was required, even absent objection at trial, where the prosecutor "subtly convert[ed] the presumption of innocence into a presumption of guilt by appealing to the jurors to perform a civic duty to support the police". Here, the prosecutor stated that:

"[I]t is an important case for the people within the county. Because your outcome of the verdict will determine what the citizenry of Midland County will tolerate, will put up with.

"The results of your vote and your verdict through a guilty as charged will reflect, and reflect with a great resounding effect, of how the citizenry of Midland County feel about someone who sells for money an animal depressant * * * ."

As stated in *Farrar, supra,* at 299:

"The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." (Footnote omitted.)

I would reverse and remand for a new trial.