PEOPLE v BOYD

1. CRIMINAL LAW—TRIAL—COMPETENCE.

There was no obligation upon the trial court to raise the issue of a defendant's competence to stand trial on its own motion where it granted defendant's counsel's motion for a continuance of nearly a full month in order to lay the groundwork for a showing that defendant might be incompetent to stand trial and after a report of a local psychiatrist showed that defendant was fully competent to stand trial, defense counsel, feeling he had no bona fide grounds for pushing the issue further, abandoned it and the trial judge was aware of this, and noted it in his opinion from the bench, and the matter was not further pursued by defense counsel (GCR 1963, 786.2).

2. CRIMINAL LAW—SPEEDY TRIAL—CONSTITUTIONAL LAW—DELAY—PREJUDICE.

The factors to be weighed in a test of the constitutionality of a trial held after long delay include: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of his rights; and (4) prejudice to the defendant.

3. CRIMINAL LAW—SPEEDY TRIAL—INTERESTS OF DEFENDANT—PROTECTION.

The speedy trial right is designed to protect three identifiable interests of the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 32, 62–74.
    Investigation of present sanity to determine whether accused should be put, or continue, trial, 142 ALR 961.
[2–5] 21 Am Jur 2d, Criminal Law § 241 *et seq.*
[6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 44 *et seq.*
[7] 29 Am Jur 2d, Evidence §§ 276–278, 292, 293.
[8] 58 Am Jur, Witnesses § 862.
[9, 10] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[11, 12] 21 Am Jur 2d, Criminal Law §§ 440, 441.
[13] 21 Am Jur 2d, Criminal Law §§ 610–615.
[14] 21 Am Jur 2d, Criminal Law §§ 540, 581, 592, 614.

.accused; and (3) limitation of the possibility that the defense will be impaired.

4. CRIMINAL LAW—SPEEDY TRIAL—DELAY—PREJUDICE.

A defendant was not prejudiced by a delay of 20 months between arrest and trial where the record discloses that on the first day of trial defendant indicated to the trial court that he wished to waive trial and have the case determined on the transcript of the preliminary examination and suppression hearings, the preliminary examination was held less than 30 days after arrest, the suppression hearing was held 13 months after arrest and there was no indication whatsoever in the suppression hearing transcript that any witness at the hearing was unable to remember anything relevant to defendant's defense because of the passage of time, the only relevant additional evidence adduced at trial related to a urine sample and affidavits based on official records never challenged as to accuracy, concerning lack of license to dispense narcotics, defendant was, except for a few days, free on bond, and defendant at no time prior to trial interposed an objection to the allegedly prejudicial delay in the disposition of his case.

5. CRIMINAL LAW—SPEEDY TRIAL—DELAY—PREJUDICE—ADJOURN-
MENT—CONTINUANCE.

Defendant was not denied his right to a speedy trial and no prejudice resulted from the delay caused by adjourning the trial date several times where the first adjournment was granted in response to a motion of a codefendant's attorney because of a schedule conflict, a further continuance was wholly attributable to defendant's desire to substitute counsel, defendant's new counsel next sought a stay of proceedings so that he might obtain a transcript of the suppression hearing and seek leave to appeal, there was no action to pursue appellate remedies, and additional delay was occasioned when the prosecutor made a motion for an order allowing the people to reconstruct their files because the files in question had mysteriously disappeared at the time the pretrial conference was held.

6. CRIMINAL LAW—EVIDENCE—URINE SAMPLE—CHAIN OF CUSTODY—
HARMLESS ERROR—WAIVER.

Admission into evidence of testimony concerning a urine sample, the chain of custody of which was challenged by the defendant in a trial for unlawfully administering and possession of heroin was harmless error, if error at all, where there was sufficient other evidence so as to make this testimony cumulative and where defense counsel at the opening of trial had stated that

he was willing to waive any question on the chain of custody of the sample.

7. CRIMINAL LAW—CROSS-EXAMINATION—SUPPRESSION HEARING—ABSENCE FROM PROCEEDING—COUNSEL—PREJUDICE—WAIVER.

A defendant suffered no loss of his cross-examination rights by his absence from a suppression hearing where his counsel, who had expressly stipulated to continue without the presence of defendant, was present; without a showing of prejudice, a defendant's absence from a proceeding that is not part of the trial proper can be waived.

8. CRIMINAL LAW—DUE PROCESS—WITNESSES—CROSS-EXAMINATION—CREDIBILITY.

A defendant was not denied due process of law by the alleged acquiescence of the prosecution in certain purportedly false testimony of prosecution witnesses because the while story was laid out in detail on the record, unlimited cross-examination was afforded defense counsel, and this left the issue of a witness's credibility to the trier of the facts.

9. CRIMINAL LAW—APPEAL AND ERROR—PRELIMINARY EXAMINATION—PRESERVING ISSUE.

A defendant may not on appeal raise errors or irregularities relating to what transpired at the preliminary examination unless the issue was timely raised prior to or at trial.

10. CRIMINAL LAW—MOTION TO QUASH—WAIVER—PRESERVING ISSUE—APPEAL AND ERROR.

A party must, in motion practice as elsewhere, state the precise, particular grounds on which he bases his claim for relief; by virtue of not raising in the trial court the issue of lack of license to dispense or administer narcotics at the time of his motion to quash a count in an information, defendant waived any right to rely on this particular ground in the Michigan Court of Appeals.

11. CRIMINAL LAW—WALKER HEARING—PRELIMINARY HEARING—OBJECTION—WAIVER.

A defendant had waived any objection to a procedure wherein a trial judge who was also the trier of fact presided over a mid-trial *Walker* hearing and examined the transcript of an evidence suppression hearing, because defendant demanded the *Walker* hearing and made no objection to the trier of fact presiding over it and the trial, and the judge before examining

the transcript had asked whether either attorney had any objection and the attorneys had none.

12. CRIMINAL LAW—INCULPATORY STATEMENTS—WALKER HEARING—JUDGES—TRIAL.

The Michigan Court of Appeals does not deem it a desirable policy to formulate an absolute rule prohibiting a judge who conducts a *Walker* hearing and necessarily hears inculpatory statements from presiding at trial.

13. DRUGS AND NARCOTICS—HEROIN—SENTENCING—CRUEL AND UNUSUAL PUNISHMENT.

A defendant is not entitled to resentencing on the asserted ground that a sentence of 20 to 30 years imprisonment for dispensing of heroin constituted a cruel and unusual punishment (MCLA 335.152).

14. DRUGS AND NARCOTICS—HEROIN—POSSESSION—INDETERMINATE SENTENCING ACT—SENTENCE CORRECTION.

A defendant's sentence of eight to ten years for possession of heroin violates the indeterminate sentencing act as construed by the Michigan Supreme Court; following correction, defendant's sentence is a minimum of six years and eight months to a maximum of ten years imprisonment (MCLA 335.153).

Appeal from Kent, George V. Boucher, J. Submitted Division 3 June 4, 1973, at Grand Rapids. (Docket No. 13612.) Decided September 24, 1973. Leave to appeal applied for.

John C. Boyd was convicted of unlawfully administering, dispensing, or disposing of heroin and of unlawful possession of heroin. Defendant appeals. Affirmed with sentence corrected.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *Robert A. Marsac,* Assistant Prosecuting Attorney, for the people.

*David A. Goldstein,* Assistant State Appellate Defender, for defendant.

Before: R. B. BURNS, P. J. and FITZGERALD and O'HARA,* JJ.

O'HARA, J. Defendants John Clifton Boyd and George Washington Singletery, Jr., were charged in a two-count information with unlawfully administering, dispensing, or disposing of heroin, contrary to MCLA 335.152; MSA 18.1122 and unlawful possession of heroin, MCLA 335.153; MSA 18.1123. After a joint bench trial, defendant Boyd was found guilty on both counts, while defendant Singletery was found guilty of unlawfully administering, dispensing, or disposing of heroin (count I) and not guilty of possession of heroin (count II). Defendant Boyd was sentenced to 20 to 30 years imprisonment on count I and 8 to 10 years imprisonment on count II of the information. His appeal is of right.[1]

Defendant first argues that where defense counsel requested and was granted a 30-day continuance for the purpose of inquiring into his client's competence to stand trial that it was reversible error for the trial court not to refer defendant to a diagnostic clinic certified by the Department of Mental Health and then to not hold a hearing on defendant's competence after examination of defendant by a local psychiatrist.

The salient feature of the instant case is that the trial judge never seriously questioned defendant's competence to stand trial, and defense counsel never requested a hearing on defendant's competence. Close attention to the facts reveals that

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Defendant Singletery has also appealed and is proceeding *in propria persona*, but his case has not been consolidated with the appeal of defendant Boyd. Hence, any reference to Singletery is incidental to our discussion of the issues raised by Boyd in the instant appeal.

on the first day of trial the trial judge saw that defendant appeared to be drowsy, and inquired by personal interrogation of defendant whether defendant was competent to stand trial. When defendant was able to satisfactorily answer the court's inquiries, the court let the matter rest. Defense counsel, who throughout the proceedings was alert and forceful, said nothing.

On the second trial day, defense counsel asked for a continuance. His purpose was to have defendant examined by a local psychiatrist to see if there were grounds for making a motion to commit him to the forensic clinic or other approved diagnostic facility for a full competency hearing. The trial judge, in granting defendant's motion for continuance, cannot be said to have adopted a motion by defense counsel for a competency determination in accordance with the statute, but merely recognized that defense counsel was entitled to a professional opinion as to defendant's competence before formally raising the matter in the trial court.

In the case at bar, the trial judge gave defendant nearly a full month in order to lay the groundwork for a showing that defendant might be incompetent to stand trial. Had such a showing then been made, it might well have been an abuse of discretion for the trial court not to raise the issue of defendant's competence on its own motion in accordance with GCR 1963, 786.2 and *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966). Since the report of the local psychiatrist showed that defendant was fully competent to stand trial, defense counsel, feeling he had no bona fide grounds for pursuing the issue further, abandoned it. The trial judge was aware of this, as shown by his opinion from the bench (in which the trial judge noted that "The court was later pro-

vided by a local psychiatrist with a written report indicating that Mr. Boyd was in fact competent to stand trial and the question of competency was not further pursued by his counsel"). Thus there was no obligation upon the trial court to raise the issue of defendant's competence on its own motion in accordance with GCR 1963, 786.2, *supra.*

With respect to the issues relating to defendant's competence to stand trial we find no error.

Defendant's next claim is based upon the delay between his arrest and trial of approximately 20 months. Although defendant was arrested on January 20, 1970, the trial was not held until September 20, 1971. There are several adjournments which defendant claims are without record explanation for the continuances. *People v Harrison,* 386 Mich 269, 274; 191 NW2d 371, 374 (1971), has held that such lack of record explanation showing good cause for continuances will be the subject of "great concern" on appeal.

The factors to be weighed in a test of the constitutionality of a trial held after long delay include: (1) length of delay; (2) the reason for the delay; (3) defendant's assertion of his rights; (4) prejudice to the defendant. *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

In *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), the Supreme Court adopted the rule announced in *Barker v Wingo, supra,* including the four factors to be considered and the rule that failure to demand a speedy trial does not constitute a waiver thereof. The Supreme Court also noted that after a delay of 18 months, prejudice is presumed. *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). In *Grimmett,* there was a 19-month delay, yet the Supreme Court concluded that defendant's speedy trial right had not been

denied because there was no evidence that defendant was prejudiced by the delay.

In *Grimmett,* the Supreme Court relied extensively on *Barker v Wingo, supra,* and extensively quoted the *Barker* opinion concerning the fourth factor, prejudice to the defendant. The speedy trial right is designed to protect three identifiable interests of the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; (3) limitation of the possibility that the defense will be impaired.

In the instant case, despite a delay of 20 months, it may be conclusively deduced that defendant was not prejudiced by the delay. This is established by the fact, that on the first day of trial defendant Boyd indicated to the trial court that he wished to waive trial and have the case determined on the transcript of the preliminary examination and suppression hearings. The preliminary examination was held less than 30 days after arrest, while the suppression hearing was held 13 months after arrest. There is no indication whatsoever in the suppression hearing transcript, either explicit or implicit, that any witness at the hearing was unable to remember anything relevant to Boyd's defense because of the passage of time.

The only relevant additional evidence adduced at trial which was not in the hearing or preliminary examination transcripts related to a urine sample and the affidavits concerning lack of license to dispense narcotics. Since the affidavits were based on official records, and there is no indication that those records have ever been challenged as to accuracy, it is clear that the 20-month delay did not affect defendant's speedy trial right with respect to that portion of the additional evidence. Thus the evidence adduced at trial which

does not appear in the record of the suppression hearing or the preliminary examination was not affected by the passage of time.

In the case at bar, defendant Boyd was, except for a few days, free on bond.[2]

Also relevant is the fact that defendant at no time prior to trial interposed an objection to the allegedly prejudicial delay in the disposition of his case. See *Barker, supra.*

Now we consider the allegation that the trial date was adjourned several times with no reason therefore appearing of record.

As to the first adjournment, the lower court record discloses that codefendant Singletery's counsel, who was to represent Singletery at his joint trial with defendant Boyd, made a consolidated motion to quash the information and to adjourn the trial date. He claimed a schedule conflict between the trial date in the instant case and other pending litigation. While the trial court denied Singletery's motion to quash, the order of the court is silent as to the motion to adjourn. However, a new trial date was set, presumptively in response to the motion of defendant Singletery's attorney.

After the date originally set for trial, defendant Boyd retained different counsel. His original attorney of record had been notified on October 22, 1970 of the new November 30, 1970 trial date. The next pertinent document under date of December 3, 1970, informs newly retained counsel of both the altered pretrial and trial dates. This amply

---

[2] Defendant was incarcerated from January 20, 1970 to February 14, 1970 (the date of arrest until shortly prior to the preliminary examination). Any custodial restraint later imposed on defendant is attributable to revocation of his bond by the trial court for failure to appear at duly noticed hearings.

corroborates the position of the people that this continuance was wholly attributable to defendant's desire to substitute counsel.

On February 1, 1971, defendant's new counsel noticed a motion to quash the information. It was heard on February 8, 1971, the next date to which the trial had been adjourned. When defendant was aggrieved by the trial court's ruling he sought a stay of proceedings so that he might obtain a transcript of the suppression hearing and seek leave to appeal. Apparently an adjournment was granted, although the record is silent in this regard. Our search of proceedings below also does not reveal any action by defendant to pursue his appellate remedies beyond arranging to obtain a copy of the record of the suppression hearing.

The case was rescheduled for trial on July 6, 1971, but approximately a week prior thereto, the prosecutor made a motion for an order allowing the people to reconstruct their files. The files in question had mysteriously disappeared from the prosecutor's office at the time the pretrial conference was held. Finally, trial was scheduled for and actually held on September 20, 1971.

We conclude that defendant was not denied his right to a speedy trial and that no prejudice resulted from the delay.

Defendant's next objection pertains to the introduction into evidence of testimony concerning a urine sample taken from an informant (Mrs. Rios) shortly after she allegedly received an injection from defendant Singletery, at defendant Boyd's direction. It is the claim of defendant that the prosecutor failed to sufficiently establish the chain of custody with respect to the urine sample so that the state police expert should not have been permitted to testify that his analysis showed the

presence of morphine and quinine.[3] Further objection is raised to the fact that the urine sample itself was destroyed for either or both sanitary reasons and chemical decomposition and thus not offered as an exhibit (the vials which had contained the liquid were similarly unavailable, too).

There was testimony by Mrs. Rios and her mother that she was injected with a liquid formed from the mixture of water and a white powder which came from the *same* envelope as was later identified to have contained heroin. This testimony was further corroborated by the observations of the police and the nurse, all of whom testified that Mrs. Rios, shortly after the injection appeared to be extremely drowsy. While Mrs. Rios and her mother may have been biased as defendant asserts, this goes to credibility and is for the trier of fact. While drowsiness can be induced by an injection of many chemicals, Mrs. Rios' condition could only be explained on this record by recent ingestion or injection of a depressant drug, of which opiates form a major classification. Thus any error, if there be such, in the admission of testimony relating to the urine sample was harmless, because that evidence was cumulative.

More importantly, however, at the opening of the trial, defendant Boyd's attorney stated to the court that the chain of evidence was not important since defendant's theory of the case was illegal search and seizure and entrapment. Defense counsel thus stated that he was willing to waive the chain of custody. Hence, defendant could not have regarded such testimony as critical or particularly damaging to the conduct of his case.

Defendant further contends that it was error to

---

[3] Morphine is a metabolic product of heroin, which is deacetylated upon introduction into the body.

proceed with a pretrial evidence suppression hearing in his absence even though defense counsel expressly stipulated to continue without the presence of defendant Boyd.

While *People v Medcoff,* 344 Mich 108, 116–117; 73 NW2d 537, 543 (1955), has recognized "[t]he right of the accused to be present at all stages of the trial where his substantial rights might be affected is * * * [a] fundamental one", it apparently is an issue of first impression in Michigan as to whether a defendant has a non-waivable right to be present at a pretrial evidence suppression hearing.[4]

It is argued that defendant lost his opportunity to cross-examine the witnesses at the suppression hearing, and to take the witness stand himself without fear that he would thereby waive his privilege against self-incrimination at trial. Defendant was present at trial and the testimony on the suppression issue was essentially the same as that at the suppression hearing. No witness changed his testimony, despite extensive cross-examination by defense counsel. We can only conclude that defendant suffered no loss of his cross-examination rights by his absence at the suppression hearing, since his counsel was present. Defendant's presence at the later stage of trial when the same testimony was adduced afforded ample opportunity for a motion to allow defendant to take the stand specially to challenge any testimony he chose without waiving his privilege against not testifying in the case in chief. The

---

[4] When faced with the issue other jurisdictions generally have recognized that a defendant has a right to be present at the holding of a hearing on a motion to suppress evidence, subject to the usual application of the waiver doctrine. *State v Williams,* 19 Ohio App 2d 234; 250 NE2d 907 (1969); *People v Colombani,* 22 App Div 2d 956; 255 NYS2d 906 (1964); *United States v Dalli,* 424 F2d 45 (CA 2, 1970).

whole issue of the defendant's nonpresence at the suppression hearing seems more a matter of form than of substance.

Mayhaps defendant's claim of error would be entitled to greater credence had he, after defense counsel freely stipulated to proceeding in defendant's absence, made a later request for a rehearing and had defendant not offered to go to trial on the suppression hearing transcript and the preliminary examination transcript.

In any event the revocation of his bond can hardly be said to bear on the essential legal question of the non-waivable character of the right to be present at the suppression hearing. If it is waivable in the absence of prejudice shown, clearly defendant waived it. If it is non-waivable the reason for his non-presence because of the claimed traffic accident is unimportant. The issue may have to be settled with finality in this state by the Supreme Court. We hold that without any showing of prejudice, the defendant's absence from a proceeding that is not part of the trial proper can be waived.

The defendant next argues that he was denied due process of law by the alleged acquiescence of the prosecution in certain purportedly false testimony of prosecution witnesses, *i.e.,* that no formal deal or understanding had been arrived at between the police and Mrs. Rios (an informant) in exchange for her testimony in the present case. Appended to defendant's appellate brief is a copy of an affidavit executed by Ricardo Meana who was the attorney of record for Mrs. Rios on a prior unrelated charge of sale of heroin. In substance the affidavit sets forth generally Meana's efforts to secure a reduction of the charges against his client. Specifically mentioned are certain discussions

he allegedly had with an officer of the Grand Rapids Police Department relative to the "possibility" of charge reduction if Mrs. Rios cooperated with the police.

In reading the affidavit of Meana it becomes apparent that he makes no claim that any deal was in fact concluded between Mrs. Rios or her attorney and the police or prosecutor. Meana stated that he at several points discussed with a police officer the possibility of the charge of sale being reduced to possession, and the possibility that if Mrs. Rios acted as a police agent her cooperation would be reported to her presentence officer for inclusion in the presentence report. Meana believes and is informed that the court which sentenced Mrs. Rios was advised of her cooperation in the presentence report.

This affidavit falls far short of claiming, whether directly or by innuendo, that any representative of the people of the State of Michigan made any deal with Mrs. Rios in exchange for her help in building a case against defendant Boyd. All the affidavit proves, if anything, is that Mrs. Rios' attorney attempted to negotiate a bargain on her behalf, but that no promises were ever made. This is consistent with the testimony of the officers that they made no promises to Mrs. Rios.

During cross-examination of one of the officers it was brought out that he had known the prosecutor's office was attempting to obtain Bertha Rios' cooperation and that the police department had concurred in the prosecutor's reduction of the sale charge to the lesser offense of possession. It was also disclosed that Mrs. Rios had in fact pled guilty to the possession count and had been sentenced to four months in jail which was suspended and she was placed on probation. Moreover, Mrs.

Rios acknowledged that she expected some consideration for her assistance in the instant case. The question is not whether the people did in fact make a concession to a prosecution witness on another charge. The question is whether the people induced a witness to testify other than truthfully in return for the concession. The whole story was laid out in detail on the record. Unlimited cross-examination was afforded defense counsel. This left the issue of Mrs. Rios' credibility to the trial judge as trier of the facts. We find no reversible error.

Defendant's next claim relates to the alleged error of the trial judge in denying defendant's motion to quash count I of the information because the people did not establish his lack of a license to dispense narcotic drugs.

While defendant Boyd did make a motion to quash prior to trial[5] alleging *inter alia* that there was insufficient evidence adduced at the preliminary examination to warrant binding him over on count I of the information, dispensing heroin, this argument was grounded on the alleged failure of the people to establish that the accused "actively engaged in administering or dispensing narcotics to Bertha Rios". Neither in his motion nor accompanying brief was there any mention of the absence of proof with respect to defendant's *lack of license* to dispense or administer narcotics.[6] It is

_____

[5] A defendant may not on appeal raise errors or irregularities relating to what transpired at the preliminary examination unless the issue was timely raised prior to or at trial. *People v White,* 32 Mich App 296; 188 NW2d 236 (1971); *People v Stinson,* 6 Mich App 648; 150 NW2d 171 (1967); *People v Miniear,* 8 Mich App 591; 155 NW2d 222 (1967).

[6] Since this case was brought prior to the effective date of the recently enacted Controlled Substances Act, MCLA 335.301 *et seq.,* MSA 18.1070(1) *et seq.,* it is unaffected by the legislative proviso which places the burden of proof on a person to rebut the presumption that he is not the duly authorized holder of an order form or

axiomatic that in motion practice as elsewhere a party must state the precise, particular grounds on which he bases his claim for relief. By virtue of not raising the lack of license issue below at the time of his motion to quash, defendant waived any right to rely on this particular ground in the Court of Appeals.

Further examination of the record indicates that the prosecution did in fact introduce proofs *at trial* which clearly and unequivocally established the fact that defendant was not duly licensed to administer or dispense narcotics. Hence, the unobjected to lack of proof on this element of the crime at the preliminary examination proceedings cannot be regarded as denying defendant any substantial right or being sufficiently prejudicial to require reversal of the judgment of conviction.

With respect to defendant's seventh assignment of error, he asserts that it was reversibly erroneous for the trial judge who was trier of fact to preside over a mid-trial *Walker* hearing[7] and also to examine the transcript of a preliminary hearing while the trial was in progress.

What actually happened is that defendant, in the midst of his bench trial, demanded a *Walker* hearing and made no objection to the trier of fact presiding over it. Practically speaking, he must be considered to have waived any objection to this procedure. While it might have been preferable not to have that judge preside over the evidentiary hearing, we do not deem it desirable policy-wise to formulate an absolute rule prohibiting a judge who conducts a *Walker* hearing and necessarily hears

---

proper registration to dispense heroin or other substance listed in the act. MCLA 335.356; MSA 18.1070(56).

[7] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

inculpatory statements from presiding at trial. See generally *People v Britt,* 37 Mich App 175; 195 NW2d 528 (1971).

*People v Ramsey,* 385 Mich 221; 187 NW2d 887 (1971), held that it is absolutely reversible error for the trial judge at a bench trial to even glance at the transcript of the preliminary examination. It will be noted that at a preliminary examination evidence is introduced to show the commission of the crime and the probable cause to believe defendant committed it. At a *Walker* hearing, all that is introduced is evidence relating to whether or not defendant's alleged admissions are a product of coercion or whether they are the product of defendant's free will. Such evidence does not relate to guilt or innocence. Where, as here, those statements are ultimately introduced at trial, it is particularly difficult to see how defendant could possibly have been prejudiced.

Unlike the situation in *People v Ramsey,* the transcript examined by the trial judge here was that of the evidence suppression hearing. Not only was every shred of evidence introduced at that hearing relitigated at trial, but the trial judge, before examining the transcript, asked whether either attorney had any objections. The attorneys had none. Under these circumstances, the doctrine of *People v Ramsey* is simply inapplicable. *People v Dorsey,* 45 Mich App 230; 206 NW2d 459 (1973).

Defendant is not entitled to resentencing on the asserted ground that a sentence of 20 to 30 years imprisonment for dispensing of heroin constituted a cruel and unusual punishment. That issue has been resolved against the defendant by our Supreme Court. See *People v Ford,* 389 Mich 751 (1972).

Defendant's sentence of eight to ten years for

possession of heroin violates the indeterminate sentencing act as construed by the Supreme Court in *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972). Following correction, defendant's sentence is a minimum of six years and eight months to a maximum of ten years imprisonment.

Affirmed, but sentence corrected.

All concurred.