PEOPLE v WHITE

1. SEARCHES AND SEIZURES—REASONABLE SEARCH.

A search by police of defendant's premises conducted without a search warrant was reasonable in light of the circumstances where the police had been fired upon from the apartment, the defendant had surrendered after a lengthy siege and was arrested outside the apartment, the search was simultaneous with the arrest, the police were unsure whether there were other assailants in the apartment, and they wished to preserve evidence and search for weapons.

2. SEARCHES AND SEIZURES—EVIDENCE—PLAIN VIEW.

Police officers conducting a lawful search had the right to seize objects coming into plain view; thus a rifle which was found in a defendant's apartment, concededly belonging to the defendant and used in a shooting, was properly admitted into evidence, as were cartridges from the rifle found at the ·site of an earlier shooting.

3. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING QUESTION—PROS-ECUTOR'S STATEMENTS.

Inflammatory and prejudicial remarks made by the prosecutor in his closing statement do not require reversal where any error involved could have been cured by objection or by instructions

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 37, 92–98.

Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.

Constitutionality of searching premises without search warrant as incident to valid arrest—Supreme Court cases. 23 L Ed 2d 966.

[2] 68 Am Jur 2d, Searches and Seizures §§ 23, 88, 94.

Search and seizure: Observation of objects in "plain view"—Supreme Court cases. 29 L Ed 2d 1067.

[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[4] 53 Am Jur, Trial §§ 797, 800, 802.

[5] 53 Am Jur, Trial § 647.

[6–8] 21 Am Jur 2d, Criminal Law §§ 241, 242, 245–248.

from the court and no objections nor requests for precautionary instructions were made.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER OFFENSES—INCLUDED OFFENSES.

Failure to instruct a jury on lesser and included offenses was not reversible error where such an instruction was suggested by the court and defendant's attorney requested that it not be given.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—AIDING AND ABETTING.

An instruction that a defendant could be convicted of aiding and abetting a shooting was proper where the defendant's gun was used in the shooting, the shots were fired from his apartment, and he remained in the apartment after the surrender of a codefendant, and thus there was sufficient circumstantial evidence to raise a jury question of his guilt as an accomplice of the codefendant.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL.

Factors to be weighed in a test of the constitutionality of a trial held after a long delay include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) any prejudice to the defendant.

7. CRIMINAL LAW—SPEEDY TRIAL.

The right to a speedy trial was designed to (1) prevent oppressive pretrial incarceration; (2) minimize the anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired.

8. CRIMINAL LAW—SPEEDY TRIAL—PREJUDICE.

A defendant was not prejudiced by a delay of 13 months between arrest and trial where for much of the time he was without an attorney because of the court's difficulty in obtaining and retaining an attorney for him, much time was consumed by motions and pretrial procedures both by defendant and by the people, the people were prepared for trial at all times with the exception of one conflict with another case in which both prosecutor and defense counsel were involved, and there was no indication that the defense was in any way impaired by the delay.

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 January 15,

1974, at Detroit. (Docket Nos. 16589–16591.) Decided July 22, 1974.

Lawrence White, Jr., was convicted of assault with intent to commit murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Dennis H. Benson,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and BRONSON and CARLAND,* JJ.

V. J. BRENNAN, P. J. Defendant Lawrence White, Jr., and Michael Anderson were charged with three counts of assault with intent to murder, MCLA 750.83; MSA 28.278. Anderson pled guilty to all three counts. Defendant was tried and convicted by a jury likewise on all three counts. On November 22, 1971, he was sentenced to life imprisonment. From verdict and sentence defendant appeals as of right.

At 12:05 a.m. on the morning of June 28, 1970, Detroit policemen Sieloff and Gordon were fired on by unknown assailants in the vicinity of Harper and McClellan Streets. The nature of the gunfire indicated the use of two distinct weapons. The officers were hit by bullet fragments. Neither offi-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

cer could say who fired the shots nor did they see the defendant in the area that night.

Inspectors Bowyer and Bertoni, while in an unmarked police car and while responding to a call for help at Harper and McClellan, were fired upon and hit by flying glass. Bowyer saw two assailants and testified that the silhouette of one resembled the defendant. Bertoni concluded that two persons were involved since he saw one man as a shot was fired from another direction.

After receiving radio information that the responsible party or parties might be at 6162 Rohns Street, the police entered and searched the residence at this location but discovered no one. The police were then directed to 6154 Rohns Street and there ascended the stairs. As some of the police reached the top of the stairs they were met by a volley of gunfire. As they scrambled downstairs a protective shot was fired which was followed by a second volley from above.

Following the officers' retreat, tear gas was fired into the house. At about 1 a.m., Anderson surrendered, throwing down a .30-caliber rifle from an upstairs window to which was attached a white flag. About 4 a.m., the defendant, after several consultations with his father, surrendered. Thereafter the police entered the premises and seized certain evidence including a .30-06 Browning rifle, various ammunition, weaponry devices and armor-piercing bullets. Searches were continued without a search warrant and, on motion to suppress, all evidence seized after 9 a.m. of June 28, 1970, was suppressed.

Fragments of spent bullets and shell casings were found at the scenes of the shootings and identified as having been fired by the guns here involved. Also was found a blue blanket belonging

to the defendant in which it is claimed the guns of the assailants were wrapped as observed earlier in the evening.

Among the issues raised by the appellant is the claim that the search of defendant's premises following his arrest without a search warrant was unreasonable and that therefore all the evidence seized should have been suppressed. In assessing this claim it is necessary to review the facts known by the officers at the time they conducted the search.

When defendant was arrested, the police knew that at about 12:05 a.m. two officers had been fired upon and hit by bullet fragments by more than one assailant in the area of Harper and McClellan; that in responding to a radio call for help at this location, two other officers were fired upon and hit by fragments of glass; Officer Joseph Brooks saw two men walking north on Rohns toward the freeway and had observed that one of the men was carrying a three-foot-long object wrapped in blue material; four minutes later he heard gunfire and he identified one of the men involved as the defendant. After the police arrived at Rohns Street they were advised by a neighbor that she had seen the resident at 6154 Rohns run into the flat carrying a rifle. They knew that as the officers ascended the stairs they were met by a volley of gunfire which was followed by a second volley as they retreated. The defendant's wife had refused to advise them as to who was upstairs, as had Anderson at the time of his surrender, and therefore they were uninformed as to how many people might be in the upstairs apartment.

Based upon this information, they entered without a warrant to ascertain whether other assailants were present, to preserve evidence which, as

they testified, might have been booby-trapped, and to search for weapons. Was such a search reasonable in the light of all the circumstances existing at the time of defendant's arrest? Our answer to this question must be in the affirmative.

The search in this case occurred almost immediately after the defendant surrendered at 4 a.m. and was therefore simultaneous with the arrest that followed. No one challenges the legality of the arrest since the crime had been committed in the presence of the officers. The fact that the arrest was outside the flat occupied by the defendant should have no bearing on the outcome of this case, as the police were unsure of whether other individuals were present in the house at this time.

In light of these facts, and despite the fact that the search revealed no other person in the house, we feel that the officers' right to make this search is sustained by *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

Having concluded the initial search to have been lawful, it follows that the officers had the right to seize objects coming in plain view, including the .30-06 rifle which it is conceded belonged to the defendant and was used in the shootings. Since it is conceded that the .30-06 rifle was used in all of these shootings, although it is denied that it was used by the defendant during the McClellan and overpass incidents, it is difficult to see the relevancy of the other items seized on Rohn and introduced into evidence. Since the gun was properly received in evidence, the cartridges found at the McClellan Street site were properly received. The casing found at defendant's apartment would indicate only that the .30-06 had been fired at Rohns Street, a fact conceded by defense counsel. If there was error in the admission into evidence

of these items seized in the apartment, it was harmless error only.

The defendant next condemns the conduct and arguments of the prosecuting attorney in his closing statement and contends that inflammatory and prejudicial statements were made which require reversal. With these contentions we do not agree. No objections were made by defense counsel nor were requests made for precautionary instructions. We conclude that any error here involved could have been cured by objection or by instructions from the court had they been brought to his attention.

In the recent case of *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973), decided by another panel of this Court and released on October 31, 1973, the Court spoke as follows:

"We note, however, that in a number of more recent cases this Court has found no reversible error in prosecutorial remarks of similar character that were not objected to at trial. *People v Evans,* 36 Mich App 238, 241; 193 NW2d 387, 389 (1971); *People v David Smith,* 16 Mich App 198, 201; 167 NW2d 832, 834 (1969); *People v Russell,* 27 Mich App 654, 663; 183 NW2d 845, 850 (1970); *People v Rowls,* 28 Mich App 190, 195; 184 NW2d 332, 334–335 (1970). Moreover, in *Ignofo* [315 Mich 626; 24 NW2d 514 (1946)] only two Justices thought the statement by the prosecutor that 'Joe Neuff [the defendant] killed that man' constituted reversible error despite the absence of an objection, while three Justices, concurring in the result, were unwilling to hold that the statement could not have been cured by appropriate court instruction, and the remaining two Justices concurred in the result without opinion. We believe the prejudice resulting from the prosecutor's remark here could have been cured by instruction had defendant objected to the remark below and therefore we decline to reverse on this issue." 50 Mich App 133–134; 212 NW2d 722–723.

It is next claimed by the defendant that the failure of the trial court to instruct on lesser and included offenses constituted reversible error. Prior to the giving of instructions the court suggested including therein a charge as to lesser and included offenses and defense counsel requested that it not be given. In omitting to give such instructions the court did not affirmatively exclude lesser and included offenses. *People v Lemmons,* 384 Mich 1; 178 NW2d 496 (1970). Defendant relies on *People v Herbert Van Smith, Jr.,* 388 Mich 457; 203 NW2d 94 (1972), but in that case the Court based its opinion on the fact that the defendant had requested a charge on lesser and included offenses. In *People v Carroll,* 49 Mich App 44, 51; 211 NW2d 233 (1973), the Court speaks as follows:

"The fifth claim made on appeal is that the trial court erred in failing to instruct on lesser included offenses. However, no request was ever made for such instructions. The opinion of two Justices in *People v Herbert Van Smith, Jr,* 388 Mich 457; 203 NW2d 94 (1972), to the contrary notwithstanding, the law still remains that requests for such instructions must be made. MCLA 768.29; MSA 28.1052; GCR 1963, 516; *People v Burton,* 46 Mich App 20; 207 NW2d 415 (1973). See also, *People v Macklin,* 46 Mich App 297, 309; 208 NW2d 62, 69 (1973)."

We find no merit in the defendant's contention in this regard.

The next question raised by the defendant is whether the trial court erred in instructing the jury that the defendant could be convicted of aiding and abetting the commission of the Rohns Street shooting.

While there is no direct evidence that the defendant himself shot at the officers on Rohns Street (although defendant's counsel seems to con-

cede as much) there is indeed circumstantial evidence that if he was not a principal, he may have been involved as an aider and abettor. His gun was used on Rohns Street and the shots came from the apartment which he occupied. White remained in the apartment after Anderson surrendered negating the possibility that his presence at the scene was involuntary or occasioned by duress. Under the decisions in *People v Ford,* 19 Mich App 519; 173 NW2d 3 (1969), and *People v Fuller,* 44 Mich App 297; 205 NW2d 287 (1973), the circumstantial evidence in the case at bar is sufficient to raise a jury question as to defendant's guilt as an accomplice to Anderson in the Rohns Street shooting.

Defendant further claims that he was denied his Sixth Amendment right to a speedy trial.

Defendant was arrested on June 29, 1970, and remained incarcerated for about 13 months before being first brought to trial (trial resulted in a mistrial as a result of a hung jury). His examination was held in July of 1970. Following examination, a trial date was set for December 28, 1970. Mr. Milton Henry, appointed counsel, filed a motion November 23, 1970, seeking permission to withdraw as counsel and the motion was granted December 7, 1970. On this same date Mr. George Lee was appointed to represent both defendants. Prior to trial, Mr. Lee requested leave to withdraw, which leave was apparently granted. Mr. Elliot Hall was then appointed counsel for the defendant on December 28, 1970, and the trial was set for March 22, 1971. As this trial date approached, the case was adjourned by stipulation of counsel because of another pending trial in which both were involved. White was not consulted in regard to this adjournment and so did not consent thereto. Mr. Hall subsequently was relieved by Mr.

Wilfred Rice who in turn was relieved by Mr. Gerald Schwartzbach on May 25, 1971. Trial was again set for June 21, 1971. Various preliminary motions both by the defense and the people prevented the trial from being held on that date. However, trial did commence on August 3, 1971, and concluded August 24, 1971. Following the mistrial, the case was promptly reset and trial commenced on October 28, 1971. The people maintain that they were at all times ready for trial and the record seems to bear out this contention. It also appears that the withdrawal of certain attorneys was actuated by the threats of violence which might occur at the trial.

The factors to be weighed in a test of the constitutionality of a trial held after long delay include: (1) length of delay; (2) the reason for delay; (3) defendant's assertion of his rights; (4) prejudice to the defendant. *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). The rule of *Wingo* has been adopted by our Supreme Court in *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972).

The speedy trial right, insofar as the fourth factor, prejudice to the defendant, was discussed in *Grimmett, supra.* As to this aspect the Court concluded that the speedy trial right was designed to protect three interests of the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; (3) limitation of the possibility that the defense will be impaired. See *People v Boyd,* 49 Mich App 388; 212 NW2d 333 (1973).

In the case at bar, the delay was some 13 months before the first trial. The reasons for the delay seem to have been the difficulty that the court experienced in obtaining and retaining an attorney for the defendant; the atmosphere of

threats which pervaded the community at this time; from May until date of trial much of the time was taken up by motions and pretrial procedures both by the defendant and by the people. Again it should be noted that the people were prepared for trial at all times except as to one conflict with another case in which both the prosecutor and defense counsel were involved. Any delay in the assertion of right by the defendant certainly arose through no fault of his own because much of the time he was without an attorney. We are unable to discern that defendant's defense was in any way impaired by this delay. As to the length of incarceration and the concern and anxiety of the defendant, while they are to be regretted, they appear to have been unavoidable.

We conclude that the defendant was not denied his right to speedy trial and that no prejudice from the delay resulted.

Lastly, we have considered defendant's claim that he is entitled to be resentenced because the trial judge improperly considered certain factors in imposing sentence and find it to be without merit.

We affirm defendant's conviction.

All concurred.