*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TERRANCE BERNARD PERRY, JR.,

      Defendant-Appellant.

UNPUBLISHED
August 22, 2019

No. 342385
Oakland Circuit Court
LC No. 2017-263799-FH

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of carrying a concealed weapon (CCW), MCL 750.227, possession of under 25 grams of a controlled substance, MCL 333.7403(2)(a)(v), two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, felon in possession of a firearm, MCL 750.224f, and resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced him as a third habitual offender, MCL 769.13, to 34 months to 10 years for CCW, 2 to 8 years for possession, 2 years for felony-firearm, 34 months to 10 years for felon in possession, and 2 to 4 years for resisting arrest. We affirm.

## I. FACTS

On June 7, 2017, Oakland County Sheriff's Deputy Brandon Devita was on duty in Pontiac when he observed a blue Impala that appeared to be speeding. Additionally, the windshield was shattered on the driver's side, and the driver was not wearing a seatbelt. The deputy activated his lights and followed the Impala as it made several turns, then pulled over to the curb and stopped. The driver jumped out and ran, after first turning and looking directly back at Deputy Devita. The deputy, who had a clear look at the driver's face, testified that defendant was the driver. Deputy Devita chased defendant north through a vacant lot and over a couple of fences before losing sight of him. During the chase, defendant looked back a few more times, giving the deputy additional opportunities to see his face. Other officers took over pursuit after Deputy Devita informed them by radio of the relevant facts.

Returning to the scene of the traffic stop, Deputy Devita performed an inventory search of the Impala. On the passenger seat, he found two plastic bags that appeared to contain heroin, as well as a digital scale. He also found a fully-loaded handgun in the center console and a cell phone sitting in a cup holder. He took pictures of these items, then removed them and secured them in the trunk of his patrol car. The deputy then joined in the search with assistance from a canine unit. For approximately 30 minutes, officers searched the area north of the Impala, the direction in which defendant had run. Returning to his patrol car at the location of the traffic stop, Deputy Devita was told by someone there that the suspect was walking south on Henderson, perhaps on his way to the Happy's Pizza on Huron. He was told that the suspect's name was Terrance and that the suspect was shirtless.

About 15 minutes later, the deputy was dispatched to Happy's Pizza, about two blocks south of the patrol car's location. There, he spoke with the manager, Brittany Crumb, and a delivery driver, Roger Rimka. He learned that defendant formerly worked at Happy's as a cook, and he was given defendant's full name. Crumb testified that defendant had entered the front door at around 6:00 p.m., shirtless and scratched up. She gave him a Happy's crew shirt, and he put it on and left. Rimka testified that, at defendant's request, he drove defendant to his next delivery destination, North Hill Farms. Defendant then thanked him and left. After interviewing Crumb and Rimka, Deputy Devita returned to his patrol car and pulled up the most recent picture from the Michigan Secretary of State database for the name he had been given. He recognized the picture as the person who had been driving the Impala and immediately informed dispatch so that the other officers could be updated.

Deputy Devita's patrol car was equipped with in-car video, which showed the Impala throughout the entire incident and during the chase. The prosecution played the video for the jury. Additionally, the deputy testified that he had reviewed the video and compared the still shot of defendant initially looking back at the patrol car to the Secretary of State photo of defendant, and they matched. Detective Matthew Peschke, the assigned officer in charge of this case, testified that he conducted an investigation regarding the cell phone that had been found in the Impala's cup holder. He stated that, after the data from the phone was downloaded pursuant to a search warrant, he reviewed hundreds of images and some video from the phone. He identified defendant as the subject of many "selfies" he found on the phone, three of which were admitted into evidence. He further testified that he had compared these photos to the Secretary of State photo and concluded it was the same individual. Detective Peschke also reviewed the in-car video of the stop and took some still photos from it. He testified that he had compared those still photos to the Secretary of State photo of defendant and concluded they were the same person. Defendant did not testify. His theory of the case was that he had been mistakenly identified as the driver of the Impala.

After the first hour of deliberations, the jury requested an opportunity to again view the in-car video and the still photo taken from it. The jury members found defendant guilty on all counts about an hour after they viewed the video again. This appeal followed. Defendant filed a motion to remand with this Court on the basis that the trial court had erred in allowing the two officers to provide testimony identifying him from the video and photographic evidence and that his counsel had been ineffective in failing to object. This Court denied the remand motion.

-2-

## II. IDENTITY TESTIMONY

### A. STANDARD OF REVIEW

Defendant first argues that the officers' testimony identifying him as the person in the video and photos was improper because neither witness was better positioned to make an identification than was the jury. Because defense counsel did not object below, this issue was not preserved for appeal. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Benton*, 294 Mich App 191, 201; 817 NW2d 599 (2011). Under the plain error rule, a defendant may avoid forfeiture if he can establish that a plain (i.e., clear or obvious) error was made, and that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if the disputed decision is clearly contradicted by existing caselaw. *Id*. at 770. The error affected the defendant's substantial rights if he or she was able to establish prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even when a defendant meets this burden of proof, reversal is not warranted unless the error resulted in an innocent person being convicted, or had a serious effect on " 'the fairness, integrity, or public reputation of judicial proceedings . . . .' " *Id*. at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

### B. ANALYSIS

Relevant evidence is admissible except when a court rule, or the state or federal constitution, provides otherwise. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). MRE 701 governs the admission of lay opinion testimony. It provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In Michigan, lay opinion testimony regarding video footage of suspects is admissible if (1) the testimony is rationally based on the witness's perception, (2) the testimony is "intended to provide a clearer understanding" of "a fact at issue in the case," and (3) the testimony does not "invade the province of the jury." *People v Fomby*, 300 Mich App 46, 50-52; 831 NW2d 887 (2013). It is well established in Michigan that it invades the province of the jury for a trial court to allow lay opinion testimony regarding a fact to be determined "where a jury is as capable as anyone else of reaching a conclusion." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980).

Here, while the first two elements of *Fomby* were met, neither officer was in a better position to make an identification from the video or the photographs than was the jury. We do not agree with plaintiff's argument that Deputy Devita was in a better position to correctly identify the person in the video because he saw defendant's face in person several times during the traffic stop and chase. This allowed the deputy to provide compelling direct testamentary evidence of the perpetrator's identity. It did not, however, provide him with any advantage over

the jury in comparing the video or the selfies to the Secretary of State photo or to defendant's person as he sat in the courtroom. We also disagree with plaintiff's argument that Detective Peschke was in a better position than the jury because it was he who created the still pictures that were admitted into evidence from the in-car video. Unlike in *Fomby*, the video in this case was short and clear, and shows only one individual. The jury was able to watch it in its entirely more than once. Because it invaded the province of the jury, the parts of the officers' testimony in which they opined that defendant was the person in the video or photos should have been precluded. Its admission was clear error because it contradicts established caselaw interpreting MRE 701. See *Carines*, 460 Mich at 763.

Defendant is not entitled to relief based on this error, however, because he failed to show that the officers' testimony affected his substantial rights. *Carines*, 460 Mich at 763. The challenged testimony was not the only evidence of defendant's identity. Identity may be established by direct or circumstantial evidence, and the testimony of the complaining witness, even standing alone, can be sufficient to identify the perpetrator. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Deputy Devita provided direct evidence of defendant's identity because he saw defendant's face when defendant looked back at him as he left the car and began to run and then several more times as he chased defendant. Defendant argued that Deputy Devita's testimony would be given undue weight by the jury because he was a law enforcement officer, but the jury was instructed to give the same weight to a police officer's testimony as it would to anyone else's testimony. "Jurors are presumed to have followed their instructions." *Benton*, 294 Mich App Mich at 202.

Additionally, the testimony from the Happy's Pizza employees provided circumstantial evidence that it was defendant who ran across the vacant lot and jumped several fences in an attempt to elude Deputy Devita. This testimony established that defendant appeared, shirtless and scratched up, two blocks away from the location of the traffic stop around the time of the crime, and he was in need of a ride. The jury also had the opportunity to see defendant in court and view the in-car video and the selfies from the phone found in the car with the drugs and gun. Also, the jury was instructed that it was the ultimate factfinder, and that it could believe or disbelieve all or part of any witness's testimony, including that of police officers. As plaintiff argued, the record supports the conclusion that the jury did follow its instructions in this case. If the members were merely accepting the officers' word for the identity element, they would not have taken the time and trouble to request the judge's permission to view the video and photos again during their deliberations.

Upon a review of the entire record, it is apparent that a reasonable jury could have found defendant guilty beyond a reasonable doubt because the fact of his identity was established by other competent evidence. *People v Harris*, 110 Mich App 636, 651; 313 NW2d 354 (1981) (holding error "was harmless beyond a reasonable doubt since the same facts were shown by other competent testimony"). *Cf. People v Hubbard*, 209 Mich App 234, 243; 530 NW2d 130 (1995) (finding it was reasonably probable that improperly admitted evidence affected the verdict where there was no direct evidence and the circumstantial evidence was not overwhelming). Because there was direct and circumstantial evidence of defendant's identity in this case, it is unlikely that the jury would have reached a different result even if the disputed testimony had been precluded. Defendant has failed to establish that this testimony was

outcome-determinative and has therefore failed to establish that his substantial rights were affected by the admission of this testimony. *Carines*, 460 Mich at 763.

## III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Defendant next argues that his attorney was ineffective because he failed to object to the testimony of the two officers identifying him as the person in the video and still pictures. Ineffective assistance of counsel claims present mixed questions of law and fact. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014). We review factual questions for clear error and review questions of law de novo. *Id*. This claim is not preserved because defendant did not file a motion for a new trial or for a *Ginther*[1] hearing in the trial court. Because defendant failed to establish that he was entitled to a remand on this issue, we denied his remand motion, and our review is limited to mistakes that are apparent on the record. *People v Payne*, 285 Mich App 181, 188; 744 NW2d 714 (2009).

### B. ANALYSIS

In order to prevail on an ineffective assistance of counsel claim in Michigan, a defendant must show that "(1) the performance of counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Plummer*, 229 Mich App 293, 307; 581 NW2d 753 (1998). The defendant bears the heavy burden of rebutting the presumption that his counsel's assistance was effective. *Id.* at 308.

Defendant correctly argues that the disputed testimony was admitted erroneously, but he must nonetheless overcome the strong presumption that the challenged action "might be considered sound trial strategy" under the circumstances of the case. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). While the trial strategy presumption is a strong one, "[t]he strategy . . . in fact must be sound, and counsel's decisions as to it objectively reasonable." *Douglas*, 496 Mich at 566.

Plaintiff posits that defense counsel may have chosen not to object to the erroneous admission of this testimony to avoid drawing attention to it, choosing instead to attack the reliability of the identification testimony on cross-examination. Assuming this to be true, we cannot conclude that this was sound trial strategy. Identity was the only fact at issue in this case, and defendant had nothing with which to disprove plaintiff's direct and circumstantial evidence that it was he who was driving the Impala that day. To allow the officers to identify defendant as the person in the video and photos when it was inadmissible and identity was the only issue in dispute would not have been a reasonable decision. This is especially true when counsel had nothing substantial with which to discredit either the officers' integrity or their identification of

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant. In this case, drawing the jury's attention to the fact that the officers were invading their province as factfinders would not likely have hurt defendant, and may have even been helpful. We conclude that defendant has established the first element of his ineffective assistance claim; that his counsel's action fell below an objective standard of reasonableness under prevailing professional norms. *Plummer*, 229 Mich App at 307.

However, defendant failed to establish the existence of a reasonable probability that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Id.* Defendant's only argument is that he was prejudiced because the testimony regarded the only fact at issue and the jury likely believed the police officers because they were police officers. As discussed above, however, there is no reasonable probability that the officers' testimony changed the outcome of this trial. Again, the officers' testimony that it was defendant whose image appeared on the video and selfies was not the only evidence of defendant's identity, the jury was properly instructed, and there is reason to believe that the jury followed its instructions. Based on the direct and circumstantial evidence of defendant's identity in this case, it is unlikely that the jury would have reached a different result even if the disputed testimony had been precluded. Because he was unable to establish that the error prejudiced him, defendant has failed to establish his claim that he did not receive his constitutional right to the effective assistance of counsel

## IV. RIGHT TO CONFRONTATION

### A. STANDARD OF REVIEW

Defendant argues next that Detective Devita's testimony regarding the information he received by anonymous tip was hearsay and violated his constitutional right to confront the witnesses against him because the anonymous statement was testimonial in nature. Defendant preserved this claim when he made a motion in limine before trial began, asking that this testimony be precluded as a violation of the Confrontation Clause. *People v Putman*, 309 Mich App 240, 245-246; 870 NW2d 593 (2015). We review preserved questions of constitutional law de novo. *Douglas*, 496 Mich at 566. The beneficiary of any error in this regard (here, plaintiff) must establish beyond a reasonable doubt that the error was harmless. *Carines*, 460 Mich at 774.

### B. ANALYSIS

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). An out-of-court statement is not hearsay if it is presented to show its effect on a police officer's conduct of a criminal investigation, because it is not offered for the truth of the statement itself. *People v Knolton*, 86 Mich App 424, 429; 272 NW2d 669 (1978). In *People v Garcia*, 31 Mich App 447; 187 NW2d 711 (1971), a police officer testified that he had received a radio communication informing him that windows were being broken at a fire station. We held that the statement was not hearsay because it was offered to show why the officers went to the fire station at that time, not as evidence that the defendant broke windows. *Id*. at 455. Here, the anonymous person's statement to Deputy Devita—that he saw a man he knew as Terrance, shirtless, walking south on Henderson toward Happy's Pizza—was comparable. It was offered to explain why the police changed the direction of their search and went south on Henderson

Street to Happy's Pizza, where they learned that defendant had arrived there shirtless and scratched, learned his full name, and were able to pull a picture of him, which allowed them to determine that defendant was the man they should arrest. As in *Garcia*, this was not hearsay because it was offered to show how and why the search developed and proceeded, not to establish identity. *Knolton*, 86 Mich App at 429.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Idaho v Wright*, 497 US 805, 813; 110 S Ct 3139; 111 L Ed 2d 638 (1990). Michigan's constitution likewise states that "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" *People v Sardy*, 313 Mich App 679, 691; 884 NW2d 808 (2015), quoting Const 1963, art 1, § 20.[2] The Confrontation Clause, therefore, "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " *Davis v Washington*, 547 US 813, 821; 126 S Ct 2266; 165 L Ed 2d 224 (2006), quoting *Crawford v Washington,* 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). See also *Sardy*, 313 Mich App at 691-692.

"The specific protections the Confrontation Clause provides apply 'only to statements used as substantive evidence.' " *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012), quoting *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011). "The Confrontation Clause does not [ ] bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Putman*, 309 Mich App at 246 (The "Confrontation Clause does not prevent the use of out-of-court testimonial statements to show why a police officer acted as he did."). Such statements are admissible and Confrontation Clause rights are not implicated, whether the statement is testimonial or nontestimonial in nature. *Putman*, 309 Mich App at 246. Because the disputed testimony was not offered substantively, but to explain the police investigation, defendant had no constitutional right to confront the person who made those statements to Deputy Devita.

We note that this testimony would not have violated defendant's right to confront witnesses against him even if it were offered substantively because it was not testimonial in nature. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 US at 822. Statements are testimonial, on the other hand, "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. Here, the anonymous informant aided the police as they attempted to apprehend a fleeing suspect whose car contained both heroin and a loaded weapon. The informant provided no information regarding any past

---

[2] The right of confrontation is analyzed the same under Michigan law as under federal law. *Sardy*, 313 Mich App at 692.

crime, only about the present appearance and whereabouts of the suspect, along with his belief about where the suspect was likely headed. As *Davis* instructs, testimonial statements are analogous to courtroom testimony, and "no 'witness' goes to court to proclaim an emergency and seek help." *Id*. at 828. Likewise, no "witness" goes to court to give the police a tip that might help them catch a fleeing felon. The statements were nontestimonial and would not have violated defendant's right to confrontation even if they had been offered substantively.

Further, even assuming the statements were offered substantively and violated defendant's confrontation rights, defendant would not be entitled to relief because plaintiff has established beyond a reasonable doubt that the error was harmless. *Carines*, 460 Mich at 774. As discussed above, a review of the entire record shows that the jury could reasonably have found defendant guilty beyond a reasonable doubt without this testimony because the fact of defendant's identity was established by other competent evidence.

## V. ASSESSMENT OF COURT COSTS

Finally, defendant argues that the assessment of court costs against him was an unconstitutional tax. This argument was rejected in *People v Cameron*, 319 Mich App 215; 900 NW2d 658 (2017), where we held that any court cost imposed under MCL 769.1k is actually a tax but concluded that the tax was constitutional. *Id*. at 218, 236.

Affirmed.


/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron